Lyons vs. Andry et als.

## No. 13,711.

## MRS P. LYONS VS. EUGENE ANDRY, SR., ET ALS.

### SYLLABUS.

1. A right of "homestead" once existing, is not conditioned upon continued and continuous "residence" upon the homestead property, though non-residence does not carry with it *per se* a "forfeiture" of the right, that fact may be "evidence" of an intention to "abandon" which, when coupled with others, may establish it. Each case on this subject must be determined by its own special facts and circumstances.

2. A daughter eighteen years old, who is living with her father, giving to him her services; is, in legal contemplation, a person dependent upon the father for support, though she may be physically able to earn her own living. The right of the father to claim the services of the minor, and the right of the daughter to support are reciprocal rights and obligations.

3. Decision in Maxwell vs. Roach, 106 La., to the effect that a homestead right is not necessarily terminated by the dissolution of the community by the death of one of the spouses is affirmed.

APPEAL from the Twenty-ninth Judicial District, Parish of Plaquemines.—*Hingle, J.*

*James Wilkinson,* for Mrs. Lyons, Plaintiff, Appellee.

*A. E. & O. S. Livaudais,* for Defendant, Appellant.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Eugene Andry, the defendant in the above suit, prayed for and obtained a preliminary injunction in the District Court, upon allegations that he owned certain real estate in the Parish of Plaquemines, which he described, and which, he alleged, did not exceed in value the sum of one thousand dollars.

That he was a head of a family having persons dependent upon him for support; had since the 24th day of November, 1880, resided upon said property which he, on said day, declared his homestead, and caused the evidence of said declaration to be registered in accordance with Arts. 219 and 220 of the Constitution of 1879, and Act 114 of 1880, in the records of this parish as appeared by reference to the said declaration and the certificate of recording of the same which were

annexed to and made a part of this petition. That, furthermore, petitioner was entitled to claim said property as a homestead under Article 244 of the Constitution of 1898.

That, acting under and by virtue of a writ of *fieri facias* issued in the suit of Mrs. P. Lyons vs. Eugene Andry *et als.*, No. 439 of the docket of this court, Mrs. Patrick Lyons, plaintiff in said suit, and the sheriff of this parish, had seized, taken in their possession and threatened to sell the above described property to pay and satisfy the amount of the judgment rendered against petitioner.

That, unless prevented by due process of law, petitioner feared and verily believed and apprehended that they would thus dispose of his property, all to his irreparable loss, damage and injury, and notwithstanding all protestations and remonstrances and that a writ of injunction was the only equitable remedy in the premises.

The plaintiff, Mrs. Lyons, answered, praying that the injunction be dissolved with damages against the plaintiff and the sureties on the injunction bond. She averred that the plaintiff in injunction was not entitled to any homestead on the property seized, because he did not reside thereon, had no person or persons legally dependent upon him, and that the same was not set apart and registered as required by law.

The District Court dissolved the injunction with twenty per cent. damages against plaintiff in injunction and the sureties on his bond and Andry appealed.

We do not understand appellee to contest the fact that the property was originally legally claimed and held as a homestead. The question is, therefore, whether, having been properly a homestead at one time, it has ceased to be such; first, by reason of the death of the wife carrying with it, as a result, the dissolution of the community between herself and Andry, vesting title to an undivided half thereof in the wife's heirs, subject to a right of usufruct by the husband upon that half during his natural life, unless he should remarry.

Second—Because the homestead right has been lost by non-residence upon the property.

Third—Because Andry has no longer any one dependent upon him for support.

The first ground for non-exemption claimed by the appellee, is answered adversely to it by the very terms of Article 219 of the Constitution of 1879, and Article 244 of 1898. This court had occasion

to so declare recently in the case of Maxwell vs. Roach, reported in 106 La. 128.

The evidence taken on the trial of the case was to the effect that Andry's wife died in 1900; that there were ten children born of their marriage—five sons and five daughters; that one of the daughters died; that all of the sons are of age, and all but one married; that the daughters are all of age and married but one, a girl of eighteen years of age. Andry testified that he left his place in 1893 because the storm of that year blew his home down; that he was, at the time of the trial, staying about three quarters of an acre from his place; that there was no dividing fence or ditch between his place and that on which he was stopping; that his son Felix was leasing the place at which he was stopping, which belonged to Mr. Ballays; that he was on his place every day; he was cultivating truck on it, that that was his way of earning a living; that there was a little shanty on the property seized, a small shanty with one room in which his son Seraphin sleeps; the room is ten by twelve feet, with flooring, and is covered with shingles; that he (witness) never left the place and was on it and worked on it every day that it was needed; he had his corn and his potatoes there at the time of testifying; he had only one place to sleep, which was at his son Felix's; he had only one room or rather one bed there; he ate very seldom with his son; the eighteen-year-old daughter cooked, washed and sewed for him—did not cook for his son.

Felix Andry testified that the room which his father occupied at Mr. Ballay's was a small one; he and his sister alone occupied it, it was a medium or small room, very little furniture in it; there is a bed in it, a very little partition is between the wall and the bed; his brother (Seraphin) made rice on his father's place that year; he alone, but Mr. Ballay made him the advances to make the crop; he also made a crop on part of Mr. Ballay's place; the two places on which he made the crop made but one rice field combined.

On the examination of the father as a witness, he was asked "how it was that he had not rebuilt his house on that place, also what the room in the shanty in which his son slept was used for before the storm, also how old he was?" These questions were objected to by the seizing creditor's counsel, and the objections sustained. The objection to the first question was that plaintiff in injunction had alleged that he was residing on his homestead on the seized property, and that he could not contradict the allegations of his own petition by attempting

to show the reasons why he was not residing thereon in a habitation; the objection to the second question was that it was irrelevant and not responsive to the issues tendered in the pleadings, and the objection to the third question was that there was no issue as to age.

Counsel of appellant states that the object of the first question was to show that he was too poor to rebuild his house.

The property exempt from execution as a homestead in this State, by the Constitutions of 1879 and 1898, is declared to be property "*bona fide* owned" by the debtor and "occupied" by him. The word "occupy" is defined by the Century Dictionary as "to take possession of, seize, take up, employ, to take possession of and retain or keep, enter upon the possession and use of, hold and use, especially to take possession of (a place as a place of residence, or, in warfare, a town or country) and become established in it." Intrans. I.—To be in possession or occupation; hold possession; be an occupant; have possession and use.

We are to determine whether the seized debtor owned and occupied and still "owns and occupies" the property which he claims as his homestead.

As he actually resided upon the property at one time, and was entitled to a homesctead, the question before us is whether he has lost his homestead rights by abandonment. If those rights are dependent upon an actual continued and continuous personal "residence" upon the property of himself and the person or persons dependent upon him for support, his rights have ceased to exist, for it is not claimed that such conditions have existed since 1893. At that date all parties ceased to have an actual "residence" upon the property. It is very generally recognized that after a party claiming the homestead has actually "resided" upon the property with his family, the fact of a change of the residence to some other place does not, of itself, *per se,* cause a forfeiture of the homestead right, though that fact may be "evidence" of an intention to abandon, which, when coupled with others, may establish it.

In this case the change of residence in 1893 was not a voluntary change, but the result of a calamity. At that time a violent storm destroyed the residences of a large number of persons in the Parish of Plaquemine and, among others. that of the plaintiff in injunction. Possession of the property itself was not, however, lost. Under the evidence it has been always retained by Andry.

It was not leased to others, but was used continuously for "truck" cultivation by the owner, though a part of it was, by his permission, utilized by one of the sons of the family (who slept in the single room of a small building which had not been destroyed by the storm) in making a crop of rice. Andry, at the time of the trial, had his corn and potatoes on the property and went upon it almost daily for the purposes of cultivation. The residence was shifted to the adjoining place at a point about three-quarters of a mile away from the boundary line between two properties between which there was neither fence nor ditch.

Residence at the new place was precarious, inasmuch as it was with another son whose own tenure was that of a mere lessee which might terminate at any time. What Andry and his daughter would do under that contingency we do not know. There can be no doubt that Andry has *visibly and continuously "occupied"* the land in the meaning of that word as applied to possession from and after the year 1893 (C. C. 3426, 3433, 3442 *et seq.*) The "occupancy" of the same by the son Seraphin Andry was the "possession" and "occupancy" of his father, and the latter's own daily cultivation of the land gave outward signs of his non-abandonment. The right of homestead exemption is in this State a constitutional right, and the terms by which it is granted should not be narrowed by either the Legislature or the courts.

While we think that the object of the granting of the right was the keeping of families together in a "home," we should not give undue prominence to the mere place where the family should be together, and lose sight of the object equally had in view of furnishing the head of the family with the means and instrumentalities by which he could support it. Forfeitures are not favored by the law. The homestead right should be upheld, unless clearly shown to have been abandoned. Each case must stand on its own peculiar circumstances.

Appellee invokes the length of time during which Andry did not return to actually live on the place, but there was no particular reason for his doing so as he was in as good a position for deriving the full benefit from the property as he would have been directly upon it.

Thompson, in his work on Homestead and Exemptions (Section 272) recognizes that the length of time during which a removing owner may have absented himself is a circumstance by which his intent to abandon may be inferred, but he says: "Though the number of months or years to which the absence of the party may be prolonged,

without working a forfeiture of his rights, has frequently been considered in connection with other facts, *time* alone would be one of the most uncertain and untrustworthy *indicia* by which the question of the permanency or temporary character of the abandonment could be determined. To hold the homestead right dependent upon continued personal occupation of the premises claimed, would be to declare the prime condition of the exemption to be occupation of the premises as a sort of *prison* rather than a *house,* to secure to the family certain pecuniary rights in consideration of their surrender of personal liberty. To restrict privileges of the owner of homestead property to a specific number of months or years during which he might absent himself from home, without losing the benefit of the homestead law, would be merely to extend the limits of the prison without changing its character as a place of confinement."

Says Dillon, J., in a case elsewhere cited: "How long an absence will forfeit the right, depends upon circumstances. If a man, for example, should lock up his homestead or even rent it and· go to Europe on a tour of pleasure or for any other temporary absence, clearly intending to return and resume possession of the homestead, it seems clear that even five years' absence would not, certainly as respects *general* creditors, work a forfeiture of the homestead right."

And in another part of the same opinion the learned Judge says: "That prolonged absence would ordinarily justify the conclusion of abandonment, but this may be rebutted and explained where third persons have not been actually misled."

In Cabeen vs. Mulligan (37 Ills. 230) the court said: "It would be manifestly unjust to hold, where the absence was prolonged indefinately by sickness or other misfortune, that the length of time of the enforced absence should seriously affect the question of abandonment." We may say here, in the case before us, that the district judge should have permitted the plaintiff in injunction to show why the house upon the property which had been destroyed had not been replaced. As the seizing creditor was basing her right upon a forfeiture of the homestead right, plaintiff was entitled to show any fact which would go to negative the theory of abandonment; the question of "residence" under the circumstances of this case was a mere "evidential" fact."

The only remaining question is as to whether the seized debtor has any one dependent upon him for support. The daughter shown to be living with him is shown to be eighteen years of age, strong and able

to work, actually doing the washing for her father. There is no doubt as to her ability to leave her father and support herself by hiring herself out, but her father has the legal right to command her services, nor is there any legal right to force her to hire out her services before reaching majority. The father is legally charged with the duty of supporting her until she should become of age. There is no direct testimony to the fact that he actually supoprts her, but as he is shown to earn his own living, and she lives with him, we must presume that he has continued to perform the duty which the law imposes upon him. We think the daughter is legally dependent upon. him for support.

For the reasons assigned, it is ordered, adjudged and decreed, that the judgment of the District Court, appealed from, be, and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed, that the seizure herein made by the defendant in injunction be set aside without prejudice to any rights which he may have at some future time to seize said property on execution of his judgment. Costs of the District Court and of this court to be borne by the defendant in injunction—appellee herein.

Rehearing refused.

BLANCHARD, J., dissents, holding that defendant had lost the homestead right by long continued non-usage of the property as a place of residence.