SOMMERYILLE, J.
Plaintiff caused ex-ecutory process to issue on a mortgage and note for $2,500, of date March 2, 1906, and it caused to be seized the Patagonia plantation, containing 560 acres, belonging to defendant.
Defendant, by petition, claims a homestead of 160 acres, and describes that homestead in his petition. He asks that the homestead be ordered to be sold separately from the other portion or portions of land, and that, if the offer is for $2,000 or less, he be permitted to retain same, and, if, it sells for more than $2,000, that the sheriff pay over to him the net sum of $2,000.
Plaintiff in an answer alleges that defendant did not have a homestead at the time-of the execution of the mortgage; that, if defendant had ever had' a homestead on Patagonia plantation, he had abandoned same, by leasing the entire plantation to another-for a year, with the privilege of renewal for a second year, and by defendant, with his family, removing a distance of some 40 miles, where they resided.
There was judgment in favor of the plaintiff, declaring defendant to have abandoned his homestead; and defendant has appealed.
[1] The judge a quo in his reasons for judgment appears to have founded the alleged abandonment upon the fact that defendant had “leased his plantation for one year with the privilege of ten more; and had mortgaged the property, and moved to Calumet, to get a living for himself and his children. In other words [says the judge a quo] he-abandoned to another all of the objects and purposes of a homestead — that of residence,, and a place of making a living, to seek another home and another place for making a living for his wife and children, probably for a period of 11 years. * * * Daiglehad no homestead after the right of residence and of making a living on the place had been granted to another by a lease of the property.”
The record shows Daigle, the defendant,, to be ignorant and unable to sign his name. He testifies that the lease was verbal, and that he leased for one year, with the right, of renewal for another year, and not for ten years. He is contradicted by his lessee; but the latter does not testify as to terms, etc., and he is not sustained by his actions. He, the lessee, left the plantation within 18 months on a simple notice to Daigle to come- and take his place, which the latter did immediately.
Witnesses testify the value of the plantation to be $4,000 or more, and it is not reasonable to suppose that defendant would have- *761 rented it for $200 per annum for a long-term. Besides, defendant ¡eft some of his furniture in the house, and requested the lessee or his wife to keep it for him. We find that the lease was for one year, with the privilege of renewal for one year, as alleged by plaintiff in its answer to defendant’s petition for a separate offer and sale of the homestead.
[3] The leasing of the homestead to another for a limited time is not of itself sufficient proof of the abandonment of the homestead.
March 2, 1906, when the act of mortgage was executed, defendant and his family were actually occupying the house on the plantation as a home. The mortgagee could not have expected defendant to have waived or abandoned his homestead, or he would have had him fill out and sign the “special waiver of homestead” printed on the act of mortgage. This the defendant did not do. [2] Waiver of homestead rights will not be presumed. The intention to waive or abandon them must be made to appear clearly, when they are not made in writing.
Daigle proved that he, with his dependent family, were occupying the place seized as a residence at the time of the execution of the mortgage, and at the time it was seized under executory process. His title deed and the allegations in the plaintiff’s petition show him to be the bona fide owner of the land; and he is asking permission to show that the property claimed by him as a homestead is not worth more than $2,000; and, in the event that it sells for more than that sum, that the sheriff pay him $2,000 net out of the proceeds of sale, in lieu of the homestead. He has met all of the requirements mentioned in Hayden v. Slaughter, 8 South. 919, 43 La. Ann. 388.
[5] Plaintiff alleges that Daigle abandoned the homestead. “The burden is on a party alleging that premises once occupied as a homestead had lost their character as such by showing their abandonment.” Jones v. Kepford (Wyo.) 100 Pac. 923. Plaintiff has not discharged this burden. It has not proved that Daigle abandoned his homestead.
The object or purpose of the law in granting a homestead to every head of a family is to give him a home in which he may reside with his family, and to preserve it for him so that he will not become a charge upon the state. The exemption attaches to his residence only. For the purpose of this law the debtor can have one residence, one home. As long as a certain place is his home, this is his homestead. Now, this homestead can be lost only through some act of his own. He can waive it, or he can forfeit it through an abandonment. But, whether he waives it by actually signing his rights away or abandons it by removal, his act causes the forfeiture, and must be performed by him alone. [4] This leads to the principle underlying the waiver or abandonment of a homestead — the intent to abandon. The American and English Encyclopedia of Law, p. 643, says:
_ “The fact of abandonment is largely a question of intention, to be determined from all the circumstances. The intention to return must be formed at the time of the removal from the premises in order to preserve and continue the homestead exemption.”
21 Oye. p. 603, says:
“Abandonment of a homestead is almost entirely a question of intent, and does not, therefore, depend upon the homesteader’s doing or not doing particular acts.”
And in Lyons v. Andry, 106 La. 359, 31 South. 39, 55 L. R. A. 724, 87 Am. St. Rep. 299, we say:
“It is very generally recognized that, after a party claiming the homestead has actually ‘resided’ upon the property with his family, the fact of a change of the residence to some other place does not of itself per se cause a forfeiture of the homestead right, though that fact may be evidence of an intention to abandon, which, when coupled with others, may establish it.”
See, also, Burch v. Mouton, 37 La. Ann. 725.
*763 Am. & Eng. Ency. of Law, p. 642, says:
“Applying this rule, it has been held that there is no abandonment of the homestead exemption if the owner, with a present and continuing intention to return, removes from the premises * * * for the purpose of business.”
Daigle testifies that he and his family left Patagonia plantation temporarily, to live in the house with his major sons, where he obtained work, for the purpose of earning money to support his family, with the expressed and avowed intention of returning to his home. His testimony is sustained in part by his friend, Mr. Lanson, and by his lessee and wife, who testify to the expressed intention of Daigle to return, although Mr. Hebert, the lessee, says also that Daigle told him he might renew the lease for 10 years. There was evidently a misunderstanding on Mr. Hebert’s part.
In Lyons v. Andry, 106 La. 360, 31 South. 40, 55 L. R. A. 724, 87 Am. St. Rep. 299, we quote Dillon, J., with approval, as follows:
“How long an absence will forfeit the right depends upon circumstances. If a man, for example, should lock up his homestead, or even rent it, and go to Europe on a tour of pleasure, or for any other temporary absence, clearly intending to return and resume possession of the homestead, it seems clear that even five years absence would not, certainly as respects general creditors, work a forfeiture of the homestead rights.”
Thompson on Homestead Exemptions, § 272, is to the same effect.
The court a quo refers to the case of Clausen v. Sanders, 109 La. 996, 34 South. 53, where we say:
“If a debtor leases the whole of the premises, he lias no right to homestead exemption,” etc.
That case involved a different condition of affairs from the present one. The owner of the property had there built three houses on his lots, separating the several places by fences, and had rented two of them to tenants, whilp he occupied the third himself. He claimed the three houses as his homestead. He did not live in but one house with his family, and the court .held that that one-alone was exempt from seizure. The other two houses had been leased in their entirety, with the avowed intent of not occupying-them himself. The debtor had there leased out the whole of two of three premises belonging to him, and we repeat he had no right to a homestead exemption of two of them; while in the present ease Daigle leased his. home temporarily, with the positive intention of returning and resuming possession of his. home, or homestead.
[6] The next question presented is the right of the debtor to fix and determine the boundary of his homestead of 160 acres, and to have it offered and sold separately from the-balance of the plantation.
Daigle had 160 acres surveyed around his-home in a way that embraced the better portions of the land, and which has the effect of dividing the plantation into several parts; and it is not an arbitrary subdivision. The 100 acres had to be around the home, and it, the home, was built on the better ground for agricultural purposes; and the homestead had to be for 160 acres, and no more. If the result shows that the other portions of land are separate from each other, and that some of them are swamp lands, and others unfit for cultivation, the debtor is not responsible therefor.
Plaintiff argues that the plantation must be sold in its entirety, because it is in excess of 160 acres; and, if more than $2,000-are realized, that $2,000 will be paid to the debtor. Under both of these circumstances, the homestead or exemption would be changed into money. It may be $2,000 if the plantation sells for more than that sum; and it may be less than $2,000 if the plantation of 560 acres sells for less than $2,000.
Such construction or constructions would defeat the object of a homestead law by depriving a debtor and his family of their home-if the land on which the home is located is in *765 excess of 160 acres, or if it, the land in its entirety, being in excess of 160 acres, is worth more than $2,000.
Article 244 of the Constitution forbids such construction. It says:
“There shall be exempt from seizure and sale by any process whatever * * * the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding 160 acres * * * to the value of two thousand dollars.”
And again in article 245:
“No court or ministerial officer of this state shall ever have jurisdiction, or authority to enforce any judgment, execution, or decree, against the property exempted as a homestead, except for the debts above mentioned * * *; provided, the property herein declared shall not exceed in value two thousand dollars.”
■ The language of the Constitution is clear. Homesteads are recognized and defined, and they cannot exceed $2,000. They cannot exceed 160 acres, and they cannot be seized and sold for debt (except certain ones named). Article 244 says that the homestead, without registration, shall be exempt, except in the parish of Orleans; where it shall be recorded, to be valid.
The property exempted from seizure as .being a homestead is 160 acres of land or less, worth $2,000 or less. If this described homestead exceeds $2,000 in value, the owner is entitled to that amount, if, under legal process, the property yields more than that sum.
Inasmuch as the debtor is entitled to only 160 acres of land or less, it follows that he may claim 160 acres around his dwelling, which adjoin one another, regardless of the effect such claim may ha re on the balance of the tract. Todd v. Gordy, 28 La. Ann. 666. The law gives him his homestead; and he is not now required to announce at any special time in advance the particular area claimed by him, as was required when he had to register it, under the Constitution of 1879. The debtor was formerly given the right to select, and he was required to register, his homestead. This right to select has not been taken away from him expressly or by implication. [7] Daigle having exercised the right to fix or declare his homestead, defining the 160 acres surrounding his home, it must now be offered for sale separate and apart from the balance of the property seized herein.
It is therefore ordered that the judgment .appealed from be reversed; and it is now ordered, adjudged, and decreed that the sheriff in offering for sale the property herein seized under executory process shall offer for sale separately the homestead of defendant, Pierre Daigle, being “that certain tract or parcel of land, being a portion of the Patagonia Plantation, situated in part in section 11, and in part in section 14, Township 15, South, range 6 East, in the Southwestern land district of Louisiana, and corresponding within the letters A, B, C, D, E, E, G, & I-I, on a plat made by J. C. Kemper, containing 160, acres,” and dated September 1, 1908, and filed in this record; that if said described property, with improvements and other appurtenances and belongings mentioned in article 244 of the Constitution, fail to sell for more than $2,000, that it, the land with improvements and the things enumerated in article 244 of the Constitution, is decreed to be the homestead of Pierre Daigle, defendant, and exempt from the seizure herein; and, if said described homestead with appurtenances should sell for more than $2,000, that the sheriff pay to said Pierre Daigle $2,000 net.