(66 South. 417)

No. 19989.

TOMPKINS v. HENRY LOCHTE CO.,
Limited.

(Oct. 19, 1914. Rehearing Denied Nov. 16, 1914.)

*(Syllabus by the Court.)*

HOMESTEAD ☞162—FORFEITURE — REMOVAL —INTENT.

Where it appears that a man, with a wife and child, by reason of a gunshot wound, his consequent temporary inability to do manual labor, and other considerations, amounting in all to an absolute necessity, is driven to leave the home which he has bought and paid for, and in which he is living, but does so in order to obtain a subsistence for his family and himself, with no intention of abandoning it, but with the intention of returning thereto, he does not thereby forfeit his right to the homestead exemption.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 315–319; Dec. Dig. ☞162.]

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemines; R. E. Hingle, Judge.

Injunction by Linn C. Tompkins against the Henry Lochte Company, Limited. From judgment for defendant, plaintiff appeals. Reversed and rendered.

Harry P. Sneed, of New Orleans, for appellant. Ivy G. Kittredge and John R. Perez, both of New Orleans, for appellee.

MONROE, C. J. Plaintiff enjoins the execution of a writ of seizure and sale on the ground that the property threatened with seizure is his homestead. That property is a tract in Plaquemines parish, measuring about 3 arpents front on the river by 40 arpents in depth, with a house and some other improvements on it. Plaintiff bought it for $900 in 1908, moved into the house within a few days after his purchase, and lived there, with his family, consisting of a wife and one daughter, aged at that time three or four years, endeavoring to earn a living by keeping a small store, cultivating the land, and trading in furs. In March, 1910, he gave the mortgage for which the seizure was made, as we infer, to secure a debt contracted for goods purchased for his store. In April, 1911, he was shot, twice through his right lung and once through his liver, and, after spending several months in a hospital and all of his money, he found, on returning to his home, that in his then physical condition, and because the people in the neighborhood were inimical to and "boycotted" him, he was unable to eke out a subsistence for himself and his family.

He therefore in August, 1911, moved to Boothville, a distance of about 14 miles, where his brother-in-law furnished the capital and opened a store, of which he placed plaintiff in charge, under an agreement to allow him a commission equal to one-half the profits; the total commission earned by plaintiff amounting to less than $300 a year. Plaintiff testified that he never intended to abandon his home, and his testimony is corroborated by several witnesses who are connected with him by marriage, and who say that he always expressed his intention to return as soon as he found himself able to do so. In the meanwhile it is shown that the place had been cultivated, to some extent, in his interest, and that a lot of sour orange trees had been planted for his benefit. It is also shown that he had never rented the place as against which testimony there were two or three witnesses who do not appear to have had any occasion to see him, and one of whom is not on speaking terms with him, who testified that they had not seen him there since he left, and that he could live there without being in danger of his life. It was also shown that, though he lives in ward 4, he was mentioned as a candidate for an office that would have required him to live in ward 5, but it does not appear that he was nominated by any person or party, and it does appear that he was not elected. Also he testified that he

did not know anything about the residence qualification, and evidently there was not enough in the mere talk about his candidacy to make it worth while for him to find out.

Upon the whole it appears, beyond dispute, that the place that he is claiming was his home and represented all that he owned; that, while he was occupying it as a home, the defendant in injunction accepted the mortgage, which it seeks to foreclose, as security for a debt; that plaintiff was forced to leave the place as a matter of dire necessity, and, after returning, was compelled, by reason of his physical condition, the obligation of providing food for his wife and child, and the conditions by which he was surrounded, to leave again, and accept employment whereby he may feed and clothe his family and himself until he recovers his strength and saves enough money to enable him to start in the way of making a living on his place. The fact that he is now employed by his brother-in-law, who was formerly employed by him, and that the latter knows nothing about the business that plaintiff is conducting for him, suggests to defendant's counsel, not unnaturally, perhaps, the suspicion that plaintiff, and not his brother-in-law, owns the business that he is now conducting, and that plaintiff moved to Boothville with the intention of remaining there permanently and permanently abandoning his home. But the relations with his brother-in-law do not appear quite so suspicious as they might, in view of the explanation which plaintiff gives and which renders it extremely improbable that he should have any means with which to start a store, and not improbable that his brother-in-law (a young man of 24, who was being attacked by another, armed with a loaded pistol, when plaintiff intervened, and received the shots of which we have spoken) should be disposed to assist him in the manner stated. Our conclusion is that neither the intent to abandon nor the fact of abandonment is established by the evidence, but, on the contrary, that both are disproved, and hence that plaintiff is entitled to the exemption claimed by him. Burch v. Sheriff et al., 37 La. Ann. 725; Lyons v. Andry, 106 La. 356, 31 South. 38, 55 L. R. A. 724, 87 Am. St. Rep. 299; St. Mary Bank v. Daigle, 128. La. 758, 55 South. 345; Hardesty v. Warner, 130 La. 737, 58 South. 527; A. & E. Ency. of Law (2d Ed.) vol. 15, pp. 642, 643; 21 Cyc. 603; Thompson on Homestead Exemptions, par. 242. We do not think the case is one calling for the infliction of damages.

It is ordered that the judgment appealed from be annulled; that there now be judgment in favor of plaintiff, perpetuating the injunction herein issued, and condemning the defendant in injunction to pay all costs.