(113 So. 853)

No. 28330.

## FIRST NAT. BANK OF CROWLEY v. BROOKS.

July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. Homestead ⬅162(1)—Homestead abandonment is largely question of intention, determinable from all circumstances.

Abandonment of a homestead is largely a question of intention, to be determined from all of the circumstances.

2. Homestead ⬅181(1, 3)—Homestead abandonment will not be presumed, and must be clearly established by party alleging it.

Abandonment of a homestead will not be presumed, and must be clearly established by the party alleging it.

3. Homestead ⬅162(2)—One moving from home to farm because of financial reverses and then to another city to perform duties of office, with intent to return when financially able, did not abandon homestead.

One moving from his city residence to nearby farm because of financial reverses and subsequently to another city to perform duties of office to which appointed, but renting home, keeping up repairs, paying taxes, and intending to return thereto as soon as he was able to support himself and family there, *held* not to have abandoned homestead.

4. Homestead ⬅181(1)—Bank, taking note and mortgage with knowledge of mortgagor's homestead exemption, assumed burden of establishing loss or abandonment of homestead.

Bank, taking over note and mortgage with full knowledge that mortgagor was entitled to homestead exemption from proceeds of mortgage foreclosure sale, assumed burden of establishing loss or abandonment of homestead.

Appeal from Fifteenth Judicial District Court, Parish of Acadia; W. W. Bailey, Judge.

Proceeding by the First National Bank of Crowley against Samuel B. Brooks, who filed an opposition claiming a homestead exemption from the proceeds of a mortgage foreclosure sale. From a judgment maintaining the homestead claim, the Bank appeals. Affirmed.

Chappuis & Chappuis, of Crowley, for appellant.

Philip S. Pugh, of Crowley, for appellee.

THOMPSON, J. Certain lots and improvements situated in the city of Crowley were sold in foreclosure of a conventional mortgage and brought in by the plaintiff bank as the seizing creditor for $2,700.

The defendant did not enjoin the sale, but filed an opposition before the sale, claiming to be paid out of the proceeds of the sale the sum of $2,000 as an exemption guaranteed to him by the Constitution.

The trial judge maintained the homestead claim, and the bank appeals.

The evidence shows, and, indeed, it is not denied, that at the time the mortgage was executed the defendant was the bona fide owner and occupied the property with his wife and three minor children who were dependent on him for support. It is also shown that the wife of defendant owned no property in her own right.

The conventional mortgage did not contain a homestead waiver.

The defense is that the defendant had lost or forfeited his homestead by abandoning the same as a residence and moving with his family onto a farm and later moving to Shreveport.

The defendant testified that he had been farming for some five years, but had been unsuccessful and forced to leave his residence in Crowley, and move onto the Copes farm about two miles from the city some time in May, 1922. He made a rice crop that year, but got practically nothing for it, and in April, 1923, having been appointed United States deputy marshal, he moved to Shreveport, where he was required to live in the performance of the duties of that office. When he moved onto the farm he rent-

ed out his Crowley home, but kept up the repairs and paid the taxes thereon. He testified that he never intended to abandon his homestead, but intended to return as soon as he was able to support himself and family in the city of Crowley.

A brother of the defendant also testified as to the financial reverses of the defendant, his being forced to move out on a nearby farm, and of his frequently expressed intention of moving back to his home.

[1, 2] This court has frequently decided that the fact of abandonment of a homestead is largely a question of intention to be determined from all of the circumstances; that such abandonment will not be presumed, and must be clearly established by the party alleging abandonment.

In St. Mary Bank & Trust Co. v. Daigle, 128 La. 758, 55 So. 345, the court said:

"Homestead rights will not be presumed to be abandoned.

"The fact of abandonment is largely a question of intention, to be determined from all the circumstances. * * *

"The burden of proof is on the party alleging abandonment of a homestead."

[3] In Hardesty v. Warner, 130 La. 735, 58 So. 527, the court said:

"In order for an abandonment of a homestead to occur, the homesteader must have left it with the intention of permanently leaving it. Mere temporary absence, in search of work, will not effect an abandonment of the homestead."

In the last-mentioned case the debtor had left his homestead and went elsewhere in order to find a better support for himself and family by working for others than for his own account on the place. The court held that there was no abandonment.

"This court in several decisions recognizes that there should be some permanence in matter of the homestead; that one should feel that it is his home; and that there is no danger of an invasion of that home in case of a temporary absence in search of means of livelihood."

In Tompkins v. Henry Lochte Co., 136 La. 58, 66 So. 417, the debtor was forced to leave the place as a matter of dire necessity, and after returning was compelled, by reason of his physical condition, the obligation of providing food for his wife and children, and the conditions by which he was surrounded, to leave again and accept employment whereby he might feed and clothe his family and himself until he recovered his strength and saved enough money to enable him to start in the way of making a living on his place, and this court held that he had not abandoned his homestead.

In the more recent case of Rigdon v. Bogan, 160 La. 552, 107 So. 403, the homesteader was not residing on his farm and had not resided on it for six years. The residence had burned down about eight years before the seizure. He had fixed up an old shack on the place and lived in it for two years, but moved out of it with his family into a rented house about a quarter of a mile away. The evidence showed that he intended to rebuild the home on the farm, but had not been able to do so.

The homestead was held not to have been abandoned.

The intention of the defendant in this case not to abandon his homestead and to return to it as soon as he was financially able to do so is as clearly established as was the intention in the cases cited. The absence from the homestead did not cover as long a period as in the cases cited.

[4] It is, as we have already stated, admitted that the defendant was entitled to the homestead when the mortgage was executed. The bank took over the note and mortgage with full knowledge of the existence of such exemption. The bank, therefore, in order to claim a right and a security to which it was not entitled at the time of creation of its debt, assumed the burden of establishing the loss or abandonment of

the homestead. This burden it has not sustained.

Judgment affirmed.