**In the Matter of Wayne Allen HANKS, Sr.**

**Bankruptcy No. B–76–1311–A.**

United States District Court, W. D. Louisiana, Alexandria Division.

June 2, 1977.

Irving Ward-Steinman, Alexandria, La., for bankrupt.

Vernon W. Holloman, Pineville, La., trustee-receiver.

William E. Skye, Alexandria, La., for trustee.

## RULING

SCOTT, Chief Judge.

This matter is before us on appeal from the decision of the Bankruptcy Court upholding the Bankruptcy Trustee's refusal to recognize certain exemptions claimed by the bankrupt. The dispute concerns whether a homestead exemption is available on a mobile home, whether 3 trucks and 3 trailers may be considered as tools of the bankrupt's trade, and whether a tiller is to be considered a tool of his trade.

## FINDINGS OF FACT

### 1.

Mr. Hanks owns a mobile home which is located on land that does not belong to him.

### 2.

This mobile home is occupied by the bankrupt and his family as a dwelling.

### 3.

A substantial amount of work would have to be performed on the mobile home to make it mobile and removable from the land.

### 4.

The bankrupt owns certain trucks and trailers. Among these are:

(a) 1967 GMC dump truck No. EM5640UC9579E—this truck is used for short hauls around the Lecompte area and is driven primarily by the bankrupt.

(b) 1974 Shopmade Float S.T. No. TST371254SPLA—this float is used primarily for hauling grain and is pulled both by the bankrupt and by various employees.

(c) 1965 Brown semi-trailer No. M654418 —this trailer is used primarily for long distance package hauling and is pulled both by the bankrupt and his employees.

(d) 1965 Clement dump-trailer No. 2STLH3163T—this trailer, when in service, is used in both short and long hauls by the bankrupt and his employees.

(e) 1965 Mack Truck-Tractor No. 4333223 —this truck, when in service, is used in both short and long hauls by the bankrupt and his employees.

(f) 1975 International Truck-Tractor No. TST371254SPLA—this truck is mainly used in long hauls by the bankrupt and his employees.

(g) A Wizard Tiller—this is used by the bankrupt in the maintenance of a family type garden.

### 5.

Mr. Hanks is employed as a school bus driver and generally drives this bus 44 miles per day, five days per week, nine months per year, except that his wife occasionally drives the route for him. The latter occurs more frequently during the grain season.

### 6.

Mr. Hanks has employed James Brown, Mike Vidrine, Jimmy Ray Matthews, David Hollifield, Benny Bonial, and others to drive his trucks for him.

## CONCLUSIONS OF LAW

### The Mobile Home

The Trustee cites several cases for the proposition that this mobile home cannot be subject to a homestead exemption. These need some discussion.

Our attention is first directed to *Roy v. Godfrey*, 142 La. 262, 76 So. 707 (1917), which simply held that in order for a debtor to claim the homestead exemption, besides owning the property, he must live there. Next is *Clausen v. Sanders*, 109 La. 996, 34 So. 53 (1903), which states that if a debtor intentionally divides his property and leases part, he may not claim the exemption over the portion leased. *St. Mary's Bank & Trust Co. v. Daigle*, 128 La. 758, 55 So. 345 (1911), also dealt with a situation where the debtor had leased the property sought to be exempted and did not reside there. During the discussion, it was stated:

> "The object or purpose of the law in granting a homestead to every head of a family is to giving a home in which he may reside with his family, and to preserve it for him so that he will not become a charge upon the State. The exemption attaches to his residence only. For the purpose of this law the debtor can have one residence, one home. As long as a certain place is his home, this is his homestead."

The case of *Denis v. Gayle*, 40 La.Ann. 286, 4 So. 3 (1888), simply tells us that even though a homestead exemption may have been recognized by a judgment, the exemption is lost and a prior judgment attaches to the property if the debtor then sells the property.

It is also asserted that the debtor must own the property in its entirety before he may claim the homestead exemption. However, the cases cited for this proposition deal with property held in indivision. The language found in *Henderson v. Hoy*, 26 La.Ann. 156 (1874), is pertinent in this regard:

> "But a sufficient answer to plaintiff's pretensions on this point is, that the property seized is not susceptible of being a homestead; it is only his share of the land; it is an incorporeal. And an incorporeal cannot be the object of the operation of the Homestead Act."

We feel that these cases are not applicable to the instant consideration. The 1974 Constitution preserves Article XI of the 1921 Constitution as a statute except that the amount of the homestead exemption is increased. In pertinent part, the provision is as follows:

> "There shall be exempt from seizure and sale by any process whatever, except as hereinafter provided, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding 160 acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support; ..."

■ Although land, as well as the building in which the family lives, be part of the homestead, we find no authority denying a homestead exemption simply because no land was attached. On the contrary, a homestead exemption has been recognized where the home (building) was located on leased land, *Cloud v. Cloud*, 127 So.2d 560 (La.App. 3rd Cir. 1961). *In Re Vincent*, 28 F.2d 396 (1928), recognizes the validity of

the homestead exemption when the home was located on 16th Section school lands. These cases recognize that the essential and primary purpose of the homestead exemption is to protect the home so that the debtor and his family "will not become a charge upon the State", *St. Mary's Bank & Trust Co. v. Daigle, supra.* In this day and time a home building (in this case a mobile home) is no less a home because it is located in a trailer park, or leased land or on the land of another so long as the home itself is owned by the head of the family (debtor). We hold here that the bankrupt is entitled to the exemption.

### The Trucks and Trailers

Our consideration is next focused on the claim of the bankrupt that his trucks and trailers must be exempt as tools of his trade. We are bound by State law in exemption considerations. The statute pertinent to these items is L.R.S. Title 13:3881, which provides, in part:

> "The following income of a debtor is exempt from seizure under any writ, mandate or process whatsoever: ... (2) the tools, instruments, and books necessary to the exercise of a trade, calling or profession by which he earns his livelihood, in whole or in part; ...

Traditionally, in exemption laws, a tool was considered as any instrument necessary for the prosecution of a trade which was originally confined to the occupation of a mechanic. However, it has been construed in a broader sense to include any occupation, employment, handicraft or business. *May v. Sloan*, 101 U.S. 231, 25 L.Ed. 797 (1879). Even under the expansive interpretation, the debtor was usually limited to exemptions for his primary trade.

The Louisiana decisions dealing with the exemption statute provide holdings which indicate the direction we must take in the situation before us. The State Supreme Court in *A. Wilbert's Sons Lumber & Shingle Co. v. Richard*, 167 La. 416, 119 So. 411 (1929), stated:

> "We agree with our learned brothers of the Court of Appeal that the exemption

laws are in derogation of the general rule that all of a debtor's property is the common pledge of his creditors must be strictly construed. Such laws, however, are not to be so rigidly construed as to destroy their purpose and intent. Where the claim to exemption can by a fair and reasonable interpretation be brought within the spirit and purpose of the statute, the exemption should be allowed. "We can find nothing in the statute which requires that it be shown that the trade, calling or profession, within which the tool or instrument is used, was the exclusive means by which the debtor obtained a living for himself and family in order to entitle him to the exemption, nor is there any justification for the assumption that the debtor made his living on the farm and that the other trade or calling was a mere sideline operated for speculative purposes only.

> "It not infrequently happens that it requires a combination of trades, callings, and professions, to eke out even a bare living for a man and his family. It would be requiring almost the impossible to show which was the dominant calling, or the one which contributed the most to the support of the expenses of the household."

Then, in *LaFourche Ice & Shrimp Co. v. Gilbeau*, 185 So. 310 (La.App. 1st Cir. 1938), discussing a boat owned by a trapper who was also a fisherman and which required at least two men to operate it, the Court stated:

> "Counsel for plaintiff contends that since he also was a trapper and did not use his boat in carrying on the trade from which he also derived earnings, he cannot now claim it as being exempt on the ground that it was used exclusively in earning his living. In other words it is urged that he had a dual means of obtaining his livelihood. The contention, however, seems to be pointedly answered by the decision of the Supreme Court in the case of *Wilbert's Sons Lumber Co. v. Richard....*

> "The next contention made by the plaintiff's counsel seeking to defeat the claim

of exemption in this case is that the defendant according to the testimony did not operate his boat alone and required the services of his son as a helper. It is urged that in order for it to classify as exempt under the law, the tool or instrument used must be one which the claimant operates personally and alone. We find no authority for imposing such a restriction in applying the law . . ."

Finally, in *Cox v. Smith*, 275 So.2d 459 (La.App. 2nd Cir. 1973), the court found: "It was the trial judge's conclusion that the statute is intended to exempt only the tools and instruments by which the debtor earned a substantial portion of his livelihood, and he found that *Cox* had not sustained his burden of proving that fishing was his principal occupation or that any substantial portion of his income was derived from the sale of fish caught by him. With this conclusion we cannot agree. The statute itself reads . . . in whole or in part and the word part is in no way modified by the word substantial, major, or any others which might imply a necessary percentage."

As stated by the Court in *Richard, supra,* the exemption laws are not to be construed as to destroy their purpose and intent. It is axiomatic that the purpose of granting exemptions of the type we are presently dealing with is to allow the bankrupt to continue to function in his livelihood so that he does not become a ward of the State. The exemptions go this far but no farther. They are not intended to provide an incentive to take bankruptcy.

■ The cases cited above indicate that the Louisiana courts have interpreted the statute literally. As long as the claimant earns his income in whole or in part from an instrumentality which he uses, he may claim an exemption. However, he may only claim it on an item which he uses. He may even require help in using the tool and have it exempted, but he may not claim an exemption over a fleet of items which he allows others to use so that he may earn income on a percentage basis or gain income from the rental of these items. He may not claim a fleet of exemptions.

■ The Bankruptcy Court was in error as to the 1967 GMC dump truck No. EM564OUC9579E.

■ There was no error concerning the Wizard Tiller.

For these reasons, the findings of the Bankruptcy Court are affirmed in part and reversed in part, and the case is remanded to that court for proceedings in accord with this ruling.