In re Sarah B. CHALIN, Debtor.

Bankruptcy No. 482–00168–LO.

United States Bankruptcy Court,
W. D. Louisiana.

July 22, 1982.

William C. Sandoz, Opelousas, La., Trustee.

Gerald H. Schiff, Sandoz, Sandoz & Schiff, Opelousas, La., for trustee.

Kenneth W. Ford, Lafayette, La., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RODNEY BERNARD, Jr., Bankruptcy Judge.

On March 26, 1982, Sarah B. Chalin, the debtor herein, filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Mrs. Chalin claimed the homestead exemption provided for in the Louisiana Constitution, Article 12, Section 9 and the Louisiana Revised Statutes, Title 20, Section 1. Mr. William C. Sandoz, the trustee in the case, objected to the claimed exemption for the sole reason that the debtor was not occupying the premises as a residence. On June 7, 1982, hearing was held on the debtor's opposition to the trustee's objection to the claimed exemption.

The home for which the debtor claimed an exemption is located in Metairie, Louisiana. Mrs. Chalin testified that she had encountered difficulty finding a job in the area near her home. At her daughter's suggestion, she began searching for a job in Lafayette, Louisiana in November, 1981, and was soon able to obtain employment. From November, 1981, till January or February, 1982, Mrs. Chalin stayed at the home of her daughter and son-in-law in Lafayette, during the week; however, she regularly returned to her home in Metairie on the weekends. In January or February, 1982, Mrs. Chalin rented an apartment in Lafayette in which to stay during the week to avoid further burdening her daughter and son-in-law. She continued, however, to return to her home in Metairie on the weekends.

At all relevant times, much of Mrs. Chalin's clothing, furniture, and other belongings were left in her home in Metairie. She also continued to receive mail at this location.

In August, 1981, Mrs. Chalin listed her home for sale with a real estate agent in an attempt to raise funds to pay her debts. Mrs. Chalin's testimony indicates, however, that she continued to hope to find a way of paying her debts without having to give up her home. In fact, when the real estate listing contract expired in February, 1982, Mrs. Chalin took the house off the market since, by that time, she had obtained employment and thought it possible that she could resume paying her debts and someday return to her home in Metairie on a full-time basis. Unfortunately, Mrs. Chalin's financial condition worsened. She filed her petition in bankruptcy on March 26, 1982 upon the advice of her attorney.

■ Louisiana law requires a homestead to be "occupied" as such in order for the homestead exemption to apply. LSA R.S. 20:1. However, after a person claiming the homestead exemption has actually resided upon the property with his family, the change of residence to another place does not, of itself, cause a forfeiture of the homestead right. *Lyons v. Andry*, 106 La. 356, 31 So. 38 (1901), *reh. denied* Dec. 16, 1901. Rather, an abandonment of a homestead is largely a question of intent to be determined from all the circumstances. *Minden Hardware & Furniture Co. v. Smith*, 165 La. 98, 115 So. 381 (1928), *reh. denied* Jan. 18, 1928.

■ The only issue in the present case is whether Mrs. Chalin's actions constitute abandonment of her homestead. Abandonment of a homestead is not to be presumed, and even temporary absence does not create a presumption of intent to abandon. It is the burden of the party alleging abandon-

ment to clearly establish that abandonment has occurred. *Smith v. Marino*, 28 So.2d 780 (1947), *reh. denied* 29 So.2d 390 (1947); *Minden Hardware & Furniture Co. v. Smith*, 165 La. 98, 115 So. 381 (1928), *reh. denied* Jan. 18, 1928; *First National Bank of Crowley v. Brooks*, 164 La. 297, 113 So. 853 (1927); *Hardesty v. Warner*, 130 La. 735, 58 So. 527 (1912); *St. Mary Bank & Trust Co. v. Daigle*, 128 La. 758, 55 So. 345 (1911), *reh. denied* May 22, 1911. Furthermore, the homestead exemption, being a Louisiana Constitutional entitlement, is not to be narrowed by the legislature or the courts. *Lyons v. Andry*, 106 La. 356, 31 So. 38 (1901), *reh. denied* Dec. 16, 1901.

■ This Court finds from all of the circumstances that Mrs. Chalin had not abandoned her homestead as of the date of filing of the petition in bankruptcy. First, it is difficult to say that Mrs. Chalin actually changed her residence, even temporarily. It seems, instead, that she acquired a dual residency considering that she regularly returned to her home in Metairie while staying in Lafayette during the week only to accommodate her business and financial needs. Mrs. Chalin always remained in possession of the home and considered it her permanent residence. Her occupancy of the home in Metairie as a homestead never ceased even though she was forced to stay in Lafayette during the week.

■ The question of intent to abandon should arise only when the absence is on a full-time, though allegedly temporary, basis. From this standpoint, the question of intent to abandon is irrelevant in this case since Mrs. Chalin's absence from her home was not on a full-time basis.

■ Even if Mrs. Chalin's part-time absence from her home and establishment of a second residence in Lafayette were sufficient factors to raise the question of abandonment, the trustee has not met his burden of clearly establishing that Mrs. Chalin intended to abandon her home. The cases have generally held that temporary absence in search of a means of livelihood, which is clearly the situation here, does not

constitute abandonment of a homestead. *E.g. Minden Hardware & Furniture Co. v. Smith*, 165 La. 98, 115 So. 381 (1928), *reh. denied* Jan. 18, 1928; *Tompkins v. Henry Lochte Co.*, 136 La. 57, 66 So. 417 (1914), *reh. denied* Nov. 16, 1914; *Hardesty v. Warner*, 130 La. 735, 58 So. 527 (1912). Absence for this purpose does not give rise to abandonment if there is an intent to return as soon as the circumstances will permit. *Rigdon v. Bogan*, 160 La. 552, 107 So. 403 (1926), citing 29 C.J. 939.

■ Mrs. Chalin's testimony clearly indicated that she always intended to return to her home in Metairie if and when her financial situation would allow her to do so. Although placing her home on the market might be some evidence of intent to abandon, it is not conclusive, especially in light of all the other circumstances. Instead, any intent to abandon was not absolute but, rather, was conditioned on Mrs. Chalin's selling the home, which did not take place. Mrs. Chalin testified that even though she had tried to sell her home in an attempt to be able to repay her debts, she always kept the hope and intent of returning to her home as soon as her financial situation improved. To deny Mrs. Chalin her homestead exemption because she at one time placed her home on the market would be to penalize her for attempting to find a way of satisfying her debts. This the Court cannot do in light of all the circumstances.

■ This Court finds that since Mrs. Chalin resided only part time in Lafayette, she was never continuously absent from her home in Metairie and, thus, never gave up her occupancy of the home as her homestead. Further, the trustee has not established that Mrs. Chalin intended to abandon her home. In fact, the evidence showed that she did everything within her power to enable her to keep her home and fulfill her true intent to someday return to live full time in her home; therefore, the homestead exemption claimed by the debtor is to be allowed over the trustee's objection.