865 So.2d 916 (2004)
Peggy Dunlap Flanagan LAMKIN, Plaintiff-Appellant,
v.
Benjamin Neil FLANAGAN, Defendant-Appellee.
No. 37,911-CA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
Rehearing Denied February 26, 2004.
*918 Robert E. Bethard, Coushatta, for Appellant.
William R. Jones, Coushatta, for Appellee.
Before WILLIAMS, PEATROSS and LOLLEY, JJ.
*919 WILLIAMS, Judge.
The plaintiff, Peggy Lamkin, appeals a judgment applying three lump-sum payments by the Social Security Administration (SSA) as a credit to offset the child support arrearage amount owed by the defendant, Benjamin Flanagan. After subtracting the credit amounts and adding interest, the trial court found that Flanagan owed a balance of $4,845.76 on the prior support judgment and that his seized property did not qualify for a homestead exemption. For the following reasons, we reverse in part, amend and affirm as amended.

FACTS
Peggy Lamkin and Benjamin Flanagan were married in 1979. Three children were born of the marriage, E.C.F., A.J.F and E.E.F. Subsequently, the parties were divorced and Flanagan was ordered to pay child support to Lamkin for the three children. Flanagan failed to make support payments and in June 1993, a judgment was entered against him in Caddo District Court in the amount of $20,295 for unpaid child support. The judgment reduced Flanagan's continuing child support obligation to whatever sum was paid by the Veteran's Administration (VA), and recognized that the amount was subject to change. A short time later, the VA discontinued payments to Lamkin.
In 1994, the SSA began making payments on behalf of the children after Flanagan was found totally disabled due to extensive medical problems related to his exposure to Agent Orange while serving in the Vietnam War. Social Security benefit reports introduced into evidence showed that SSA made separate lump-sum payments on behalf of the three children. In April 1994, a payment of $6,080 was made for E.C.F., representing "back pay from 6/89-4/94." In August 1994, SSA made payments of $6,528 for A.J.F. and $6,528 for E.E.F., representing "back pay from 6/89-9/94." Thereafter, SSA made monthly payments for the children.
In December 2001, Lamkin filed a motion in Red River Parish District Court to make the June 1993 Caddo judgment executory. The motion was granted and Lamkin seized immovable property owned by Flanagan in Red River Parish under a writ of fieri facias to satisfy the judgment. Flanagan sought a temporary restraining order to stop a scheduled sheriff's sale, arguing that he was entitled to a credit against the amount due on the 1993 judgment as a result of the SSA payments. He also filed a declaration of domicile alleging that the seized property was subject to a homestead exemption under LSA-R.S. 20:1.
After a trial, the court issued a written opinion finding that the seized property did not qualify for a homestead exemption. In addition, the trial court found that Flanagan was entitled to a credit for the entire amount of SSA lump-sum payments against the child support arrearage. The court rendered judgment setting the amount of $4,845.76 as the balance due on the 1993 judgment and assessing costs equally between the parties. The motions for new trial filed by Lamkin and Flanagan were denied. Lamkin now appeals the judgment and Flanagan has filed an answer to the appeal.

DISCUSSION
Lamkin contends the trial court erred in crediting the SSA lump-sum payment for E.C.F. against the child support arrearage amount in the June 1993 judgment. Lamkin argues that because she did not receive this payment, Flanagan should not have been given a credit for those funds to offset the amount of past due child support he owed.
*920 An order of child support is for the benefit of the children, even though directed paid to a parent or other custodian. If the sum directed to be paid by the father is paid through social security benefits derived from the father's account, the purpose of the order for support has been accomplished. Faul v. Faul, 548 So.2d 957 (La.App. 3rd Cir.1989).
A trial judge is given reasonable latitude in determining matters affecting the welfare of children, and a determination based upon the facts of a particular case is entitled to great weight. Furthermore, the trial judge is given great discretion in either granting or modifying child support awards and his decision will not be set aside or amended on appeal absent a clear abuse of that discretion. McCloud v. McCloud, 544 So.2d 764 (La.App. 3rd Cir. 1989).
In the present case, Lamkin testified that she did not receive the April 1994 lump-sum payment by SSA on behalf of E.C.F. She stated that at the time of the payment, the child was living with Flanagan in Texas. Lamkin introduced into evidence a letter from the SSA stating that she was appointed as representative payee for her son on July 20, 1994, and that "no retroactive benefits" were paid to her for E.C.F.
Flanagan testified that he did not specifically recall receiving a lump-sum payment for E.C.F. from SSA. However, Flanagan acknowledged that when the child was living with him in 1994, a check from SSA was deposited in his son's bank account.
Although the record indicates that Lamkin did not receive the lump-sum payment made by SSA on behalf of E.C.F., this evidence does not support her contention that the amount of the payment should not be included in a credit for social security benefits paid for the child. The evidence shows that SSA issued a lump-sum payment for E.C.F. in April 1994. An award of child support is for the child's welfare and if the support obligation of the father is paid through social security benefits resulting from the father's disability, the purpose of the child support award has been accomplished. Thus, even though the SSA payment was not issued to Lamkin, the funds were paid for the support of the child. Consequently, we cannot say the trial court erred in including the amount of the lump-sum payment for E.C.F. in any credit applied against Flanagan's support obligation.

Credit for Social Security Benefits
Lamkin contends the trial court erred in the method used to credit the lump-sum payments against the child support arrearage. She argues that a portion of the SSA payments should have been applied to offset the child support amounts which became due during the period between the date of judgment and the date when the SSA payments were received.
In his brief, Flanagan contends that his past due and future child support obligations have been completely extinguished by the social security benefits already paid on behalf of his children. In support of his position, Flanagan cites the 1993 judgment provision stating that his child support obligation "is hereby reduced to whatever sum is paid to petitioner, Peggy Dunlap Flanagan, by the Veteran's Administration. The court recognizes that the amount presently being paid to petitioner, for the benefit of the minor children is $401 per month, which may be increased or decreased by the Veteran's Administration pursuant to law, policy or change of circumstances." Contrary to Flanagan's contention, a reasonable reading of the judgment as a whole demonstrates that this language does not mean that the child support arrearage of $20,295 would be satisfied *921 by any amount of government benefits subsequently paid for the children. Rather, the language indicates that Flanagan's continuing child support obligation, beyond the arrearage amount fixed in the judgment, would be limited to the amount of government benefits payable to his children under the law. Thus, Flanagan's argument lacks merit.
In the prior cases of Faul, supra, McCloud, supra, and Folds v. Lebert, 420 So.2d 715 (La.App. 4th Cir.1982), the courts allowed each father a credit toward the amount of past due child support because the children received social security income as dependents of their disabled fathers. In those cases, as here, the social security benefits were paid to the mother for the children because the father was disabled and was prevented from working during that period. As stated in Faul, the father is entitled to credit for such payments against his liability under the support order.
After reviewing the jurisprudence and the record, we agree with the trial court that Flanagan should receive a credit for the social security lump-sum payments to offset the child support arrearage amount. However, we must consider the issue of whether all or a portion of such payments should be used as a credit to reduce the amount of past due child support. In her brief, Lamkin contends the trial court erred in applying the entire amount of SSA lump-sum payments as a credit to offset the child support arrearage of $20,295 reflected in the 1993 judgment.
As previously noted, the 1993 judgment provides that Flanagan's support obligation subsequent to rendition is limited to the amount of government disability benefits paid. The SSA records admitted into evidence show that the lump-sum payment for E.C.F. was for the period through April 1994 and that the payments for A.J.F. and E.E.F. were for the period through September 1994. As a result, a portion of the SSA benefits paid represents payment of Flanagan's child support obligation for the period after rendition of the 1993 judgment. Thus, the entirety of the lump-sum payments should not have been applied as a credit to offset the arrearage amount.
The payment of $6,080 for E.C.F. represents a period of 59 months, with equal monthly payments of approximately $103.05. The post-judgment period of June 1993 through April 1994 is eleven months, so the child support amount for this period is $1,133.55. Thus, the credit amount which should have been applied to the arrearage is $4,946.45. The payments of $6,528 for A.J.F. and E.E.F. represent a period of 64 months, with equal monthly payments of approximately $102. The post-judgment period of June 1993 through September 1994 is 16 months, so the child support for this period is $1,632. The credit amount which should have been applied to the arrearage is $4,896 for each child. Subtracting the total credit of $14,738 from the arrearage amount of $22,194 results in a balance due on the judgment of $7,456 plus interest until the date paid.
Using this method to apportion the credit amount is consistent with the 1993 judgment and is necessary to satisfy Flanagan's child support obligation for the interim period between the date of judgment and the payment of social security benefits for the children. Consequently, we must find that the trial court abused its discretion in failing to apply a portion of the SSA payments to child support for the post-judgment period. We shall amend the judgment accordingly.

Homestead Exemption
In his answer to the appeal, Flanagan contends the trial court erred in finding *922 that the seized property did not qualify for a homestead exemption. Flanagan argues that he is entitled to an exemption because Lamkin failed to establish his intent to abandon the homestead.
The bona fide homestead consists of a residence occupied by the owner and the land on which the residence is located. The homestead is exempt from seizure and sale under any writ or process whatsoever, except as provided by the statute. This exemption extends to $25,000 in value of the homestead. LSA-R.S. 20:1.
Louisiana law requires a homestead to be "occupied" for the homestead exemption to apply. However, after a person claiming the homestead exemption has actually resided upon the property with his family, the change of residence to another place does not, of itself, cause a forfeiture of the homestead right. In re Chalin, 21 B.R. 885 (W.D.La.1982). Abandonment of a homestead is not to be presumed, and even temporary absence does not create a presumption of intent to abandon. The party alleging abandonment has the burden to clearly establish that abandonment has occurred. Chalin, supra.
In the present case, Becky Craig, the Red River Parish Assessor, testified that Flanagan's property was subject to a homestead exemption until 1998. Craig stated that at the time, she regularly drove past the property and observed that the electricity meter had been removed and the residence appeared to be unoccupied. Craig testified that she instructed her deputy to inspect the premises and that based on the inspection results, she canceled Flanagan's homestead exemption. Craig stated that she did not mail written notice of the cancellation to Flanagan, but said he would have learned about the action when the tax bills were issued. She testified that in 1992, Flanagan visited the Assessor's office to explain that his mailing address was in Texas because he was living there temporarily due to illness. Craig stated that parish records indicated Flanagan had registered to vote in 1993, but had never voted.
E. Vaughn Womack, Jr., the chief deputy assessor, testified that he personally inspected Flanagan's property in February 1999. Womack stated that he looked through a window of the house and saw a pile of "clothing or something" on the floor in one room. Womack did not recall seeing any furniture in the room and did not see any indication that someone was residing in the house. Womack testified that from his observations, he determined that the house was unoccupied.
Flanagan testified that in 1974, he purchased the residence located in Coushatta, Red River Parish, and had lived in the house with Lamkin during their marriage. Flanagan stated that he was exposed to Agent Orange while serving in Vietnam as an Army Ranger from 1968 to 1969. He testified that his health deteriorated after his return from the war, and that in 1988, he suffered a stroke and went into a diabetic coma. Flanagan stated that his friends then moved him to Columbus, Texas, to help him get medical treatment in VA hospitals for diabetes and post traumatic stress disorder.
Flanagan testified that he planned to keep the Red River Parish property as his primary residence and that he did not intend to permanently live in Texas. Flanagan stated that he returned to his house in February 1994, when Lamkin told their son to leave her residence, and that he stayed in Coushatta for approximately five months. However, he returned to Texas with his son to obtain treatment for Agent Orange intoxication.
Flanagan testified that he did not spend the night at his Coushatta property during *923 1995 or 1996. He stated that he spent two or three nights at the house in 1997 and 1999, but had not stayed overnight in the house since that time. Flanagan explained that the house was not habitable for a sick person after the roof leaked and caused damage to some of the sheetrock. Flanagan testified that in the Fall of 2000, his friends began renovating the house and that new floors, ceilings and windows had been installed. Flanagan stated that he had intended to permanently return to the house in May 2002, but could not because of his prolonged daily treatment for a severe eye infection.
Flanagan testified that the electricity in the house was disconnected several times when he did not have enough money to pay the bill, but power was restored when he was able to pay the amount due. Flanagan stated that he kept furniture in the house until recently when he stored some items to allow space for additional renovation. He acknowledged that he has a bank account in Texas, but not in Louisiana. Flanagan testified that he has always intended to maintain the property in Coushatta and return to live in the house when physically able.
In her brief, Lamkin emphasizes the fact that when she seized Flanagan's property in December 2001, the assessor's office did not recognize the property as homestead exempt and that Flanagan did not file a declaration of domicile or homestead until after he learned of the seizure. However, we note that LSA-R.S. 20:1 does not require that such a declaration be filed in the public records as a prerequisite for a valid homestead exemption from seizure and sale. The statute requires that a homestead be occupied as a residence by the owner. Because Flanagan resided on the property with his wife and children during the marriage, the issue is whether his subsequent actions constituted an abandonment of his homestead.
Abandonment is a question of intent based upon the circumstances and is not to be presumed. As the party alleging abandonment, Lamkin bore the burden of establishing that Flanagan had abandoned his homestead. Lamkin presented evidence that Flanagan was absent from the residence for an extended period of time. However, the change of residence to another place does not, of itself, cause a forfeiture of the homestead right. Although Flanagan acknowledged that he had not stayed in the house since 1999, he testified that during that time period, he continued to seek medical treatment from doctors in Texas. Additionally, Flanagan stated that water damage and mold had prevented him from staying in the house at the time because of his physical condition.
Flanagan testified that he always intended to return to his home in Red River Parish when he was physically able and that renovations had begun in 2000 to enable him to live in the house. There was no evidence that Flanagan ever attempted to sell the property, despite his financial difficulties.
After reviewing the record and considering all of the circumstances, we conclude that Lamkin failed to satisfy her burden of establishing by a preponderance of evidence that Flanagan intended to abandon the property as his homestead. To the contrary, the evidence showed that Flanagan took steps to maintain the property by paying the taxes and making repairs. Consequently, the trial court erred in denying Flanagan a homestead exemption for his property in Red River Parish. Thus, we shall reverse that part of the judgment.

*924 Court Costs

Lamkin contends the trial court erred in assessing her with one-half of the court costs. She argues that splitting the costs between the parties was not equitable because the court found that Flanagan owed a balance due on the 1993 judgment.
While it is a general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs of a lawsuit in any equitable manner. LSA-C.C.P. art.1920. Upon review, a trial court's assessment of costs will be reversed only upon a showing of an abuse of discretion. Grocery Supply Co. v. Winterton Food Stores, 31,114 (La.App.2d Cir.12/9/98), 722 So.2d 94.
Here, the trial court found that Flanagan owed a balance on the prior judgment. Although Lamkin did not receive the complete relief she sought at trial, she was initially required to go to court because of Flanagan's failure to pay child support. Consequently, we must find that the trial court abused its discretion in assessing costs equally and we shall reverse that part of the judgment.

CONCLUSION
For the foregoing reasons, the trial court's judgment is amended to increase the balance due to Peggy Lamkin under the 1993 arrearage judgment to the amount of $7,456, plus interest at the rate set by the trial court. That part of the judgment denying Benjamin Flanagan a homestead exemption for the seized property in Red River Parish and assessing costs to Lamkin is hereby reversed. Costs of this appeal are assessed one-half to the appellant, Peggy Lamkin, and one-half to the appellee, Benjamin Flanagan.
REVERSED IN PART; AMENDED AND AFFIRMED AS AMENDED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.