**In re Ricky Samuel HOLMAN, a/k/a Rick Holman, Debtor.**

**Ricky Samuel HOLMAN, Plaintiff,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

Bankruptcy No. 382–00804.
Adv. No. 382–0255.

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Jan. 4, 1983.

C. Kinian Cosner, Jr., Cosner, Waldschmidt & Crocker, Nashville, Tenn., for debtor/plaintiff.

Margaret M. Huff, Asst. U.S. Atty., Nashville, Tenn., for defendant.

MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

This matter is before the court on the debtor's complaint to avoid a lien pursuant to 11 U.S.C.A. § 522(f)(2)(B) (West 1979). The Farmers Home Administration ("FMHA") holds a security interest in several items of debtor's farm equipment. Debtor alleges to be a farmer and seeks to avoid the FMHA's lien on the theory that the lien impairs the debtor's exemption in "tools of the trade." After consideration of the evidence presented at trial, the stipulations, the briefs and arguments of the parties and the entire record, the court finds that the debtor was not engaged in the trade of farming during the applicable period and therefore debtor's complaint for avoidance of the lien is dismissed.

The following constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 16, 1982. On the date of the petition, the debtor had in his possession farm equipment, including an Allis Chalmers tractor, a Westfield grain auger, a Brady trailer, a N.H. Mower-Roundbaler and a Cobey trailer. All of these items are subject to the nonpossessory, nonpurchase money security interest of the FMHA. By stipulation, the listed items are valued at $8,650.

The debtor's statement of affairs reveals the debtor's occupation at the time of filing was "assistant manager" for North Central Farm Service. The debtor began working for North Central in March of 1981 at a salary of $175 a week. Between March of 1981 and June of 1982, the debtor worked approximately 40 hours each week except during the months of July and August, 1981. During those two months, the debtor testified he harvested wheat. The debtor stated in his petition that he did not remember how much income he received during the two years prior to bankruptcy. He testified, however, that his total farm income for 1981 was somewhere between $15,000 and $18,000. The debtor concedes that he has never made a profit at farming. During 1981, he and his former spouse lived off his former spouse's income and his salary from North Central Farm Service.

The debtor ceased all efforts at farming in November of 1981.

In June of 1982, the debtor began working for a hardware company. By November, 1982, the debtor had been assigned a territory and was working full time as a hardware salesman. The debtor indicated that he has been advancing within the hardware company and anticipates earning a substantial living from his commissions.

At this time, the debtor does not own any land on which he could farm. The debtor's father, however, owns a seed company and land belonging to the seed company may be available to the debtor should he choose to farm again. The debtor testified that he would commence farming if he had the use of the equipment he seeks to exempt in this proceeding.

11 U.S.C.A. § 522(f)(2)(B) (West 1979) provides that the debtor may avoid a lien on the debtor's property to the extent that such lien impairs an exemption available to the debtor if the lien is "a nonpossessory, nonpurchase money security interest in . . . (B) implements . . . or tools of the trade of the debtor or the trade of a dependent of the debtor." The debtor seeks to avoid a lien on implements and tools allegedly used in the trade of farming. If the debtor cannot establish that he is engaged in the trade of farming, then he will not be entitled to his claimed exemptions.[1]

---

1. Because the court determines that the debtor is not a farmer for purposes of the "tools of the trade" provisions of 11 U.S.C.A. § 522(f)(2)(B) (West 1979), the court need not reach the other issues raised by the parties. Specifically, the court does not address the question whether the debtor can exempt farm equipment worth $8,650 under the provisions of 11 U.S.C.A. § 522(d) (West 1979) or the question whether the equipment here at issue is "tools" or "implements" within the meaning of § 522(f)(2)(B). *See, e.g., Warren v. Associates*

11 U.S.C.A. § 101(17) (West 1979) defines "farmer" as follows:

'[F]armer' means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

11 U.S.C.A. § 101(17) (West 1979) is applicable in cases "under this title" and is binding on the court in determining whether an individual is a farmer for purposes of the avoidance of liens on tools of the trade under 11 U.S.C.A. § 522(f)(2)(B) (West 1979).[2]

The debtor does not satisfy the Code definition of a farmer. During 1981, the year immediately preceding the filing of the bankruptcy petition, the debtor did not meet the percentage income requirement imposed by the Bankruptcy Code. Although the debtor's schedules state that the debtor does not remember how much income he received from his trade or profession during 1981, his trial testimony was that his total farm income in 1981 was somewhere between $15,000 and $18,000. The debtor also testified that he began working at a nonfarming trade—as an employee of a farm service store—in March of 1981.[3] The debtor testified that he earned $175 a week and worked at that salary from March of 1981 through the end of 1981, with the limited exception of July and August. The court finds from the debtor's testimony that the debtor received nonfarm income from his salaried employment of approximately $6,300 (36 weeks at $175 per week).[4] Accepting the debtor's testimony that his farming income was somewhere between $15,000 and $18,000 during 1981, the debtor's gross income including his salary at the farm service store was between $21,300 and $24,300. No contrary proof was presented at trial. Even accepting a combination of these statistics most favorable to the debtor, the percentage of the debtor's gross income derived from farming was less than 80% of the debtor's gross income for the taxable year 1981. The debtor is, therefore, not engaged in the trade of farming for purposes of qualifying for lien avoidance under the Bankruptcy Code.[5]

Financial Services, Bk. No. 82–10961, Adv. Proc. No. 82–2766 (Bankr.W.D.Tenn. Nov. 26, 1982).

**2.** The bankruptcy cases concerning the definition of farmer arise in the context of determining whether a debtor is a farmer for purposes of conversion to Chapter 7 under 11 U.S.C.A. § 1112(c) (West 1979). § 1112(c) prohibits the court from converting a case under Chapter 11 to a case under Chapter 7 if the debtor is a farmer. See In re Blanton Smith Corp., 7 B.R. 410 (Bkrtcy.M.D.Tenn.1980); In re Ballard, 4 B.R. 271 (Bkrtcy.E.D.Va.1980). Though the legislative history to § 101(17) is concerned primarily with the concept of conversion, the statute on its face requires the court to apply the definition of farmer provided in § 101(17) wherever the definition of farmer is relevant. Though the word farmer is not used in 11 U.S.C.A. § 522(f)(2)(B) (West 1979), a debtor who claims farming as his trade must satisfy the definition of farmer found in § 101(17).

**3.** The debtor has not argued that his salaried employment at North Central Farm Service was in fact "farming" for purposes of the Bankruptcy Code. The definition of "farming operation" in 11 U.S.C.A. § 101(18) (West 1979) would not appear to include an employee of a farm service company.

**4.** There is no testimony that the debtor worked other than continuously between March and December of 1981 except for the debtor's testimony that he did not work during the months of July and August. Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice that there were 36 weeks between March and December of 1981 excluding the months of July and August of that year.

**5.** The FMHA representative testified that the FMHA uses a "50% of income rule" to determine whether a loan applicant is in fact a farmer. It is apparently a prerequisite to obtain the loan at issue for the borrower to be a farmer under the definition employed by the FMHA. It is not clear from the testimony, however, whether the 50% test examines 50% of the borrower's gross income or 50% of the borrower's net income. Moreover, though the testimony of the representative of the FMHA was insightful into the loan operations of that agency, the existence of an explicit definition of farmer for purposes of the Bankruptcy Code obviates the necessity for the court to analyze or apply the definition of farmer used by the FMHA.

This finding is supported by several other facts in this case. Even while maintaining his wheat crop, the great bulk of the debtor's working time during the year preceding the petition was spent in nonfarming activities. The debtor spent fully 40 hours per week laboring as an assistant manager for North Central Farm Service. The debtor testified that his livelihood was earned from his salary and his former spouse's income from nonfarming activities, not through farming. The debtor, in fact, never made a profit from farming.[6] The debtor never had any employees assist him in his farming efforts and does not own any farm land. The debtor seems to have engaged in farming on a limited basis, certainly not with the intensity to qualify as a trade or profession. The debtor's statement that he "intends" to be a farmer someday is not doubted by the court; it is merely not determinative of whether the debtor was a farmer on the date of the petition under the definition required by 11 U.S.C.A. § 101(17) (West 1979).

The debtor cannot claim farming as his trade and, thus, the liens of the FMHA on the debtor's farm equipment are not liens on implements or tools of the trade of the debtor. Accordingly, debtor's complaint to avoid the liens of FMHA is DISMISSED.

An appropriate order will be entered.

---

**6.** Although it would appear possible under § 101(17) to be fully engaged in the trade of farming without ever making a profit, the ab- sence of profit from the debtor's farming opera- tions supports the court's finding that the debt- or's trade was other than farming.