In re Margaret R. NEFFERDORF a/k/a Margaret R. Nefferdorf, Debtor.

Margaret R. NEFFERDORF a/k/a Margaret R. Nefferdorf, Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Defendant.

Bankruptcy No. 82–04223K.
Adv. No. 82–3163K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 2, 1983.

Irwin Trauss, Philadelphia, Pa., for plaintiff/debtor.

Esther Hornik, Philadelphia, Pa., for defendant.

James Wade, Philadelphia, Pa., for trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case reaches the Court on the complaint of the debtor for declaratory relief pursuant to § 506(d) of the Bankruptcy Code. The debtor requests the Court to avoid the mortgage lien of the Federal National Mortgage Association, (F.N.M.A.). After hearing held on December 16, 1982, and upon consideration of the motion to dismiss the complaint filed by F.N.M.A., the Court will dismiss the complaint.[1]

## FINDINGS OF FACT

1. The debtor herein filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 8, 1982.

2. The debtor owns property situate at 3441 Hurley Street, Philadelphia, as tenants-by-the-entireties with her husband, James E. Nefferdorf.

3. Debtor's husband, James E. Nefferdorf, has previously received a discharge in bankruptcy.

4. Federal National Mortgage Association is the assignee of the original mortgagee of the aforementioned property.

5. F.N.M.A. is secured by a mortgage and note dated May 8, 1979.

6. The total amount of the debt is presently in excess of $19,000.00.

7. The debtors are in substantial arrears on the loan.

8. F.N.M.A. commenced foreclosure proceedings in the Court of Common Pleas for Philadelphia County in December of 1980.

9. The foreclosure proceeding has been stayed by imposition of the automatic stay (11 U.S.C. § 362) as a result of the separate bankruptcy filings of the Nefferdorfs.

10. F.N.M.A. filed a complaint for relief from the automatic stay on November 5, 1982. (Adversary Number 82–2944).

11. The debtor filed a complaint to determine F.N.M.A.'s secured status pursuant to § 506 of the Bankruptcy Code on November 29, 1982. (Adversary Number 82–3163).

12. F.N.M.A. filed a complaint for abandonment of the property on the same date.

13. Upon review of the case, the Court entered an Order on November 30, 1982, to schedule the discharge hearing for December 16, 1982.

14. The Court also entered an Order on December 1, 1982 requiring counsel for F.N.M.A. and counsel for the debtor to file a detailed stipulation of all matters which were not in good faith dispute.

15. Neither attorney saw fit to comply with the Order of December 1, 1982.

16. On December 16, 1982, the following matters were scheduled for hearing:

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

a) The debtor's discharge in bankruptcy.

b) The complaint of F.N.M.A. for abandonment. (Adversary Number 82–3165).

c) The debtor's complaint for declaratory relief. (Adversary Number 82–3163).

17. At the hearing, the Court heard extensive arguments and received testimony on the issue of the value of the debtor's premises.

18. Both parties introduced testimony from qualified real estate appraisers on the issue of fair market value.

19. Upon review of the testimony and the appraisal reports, the Court finds the fair market value of the property located at 3441 Hurley Street to be $11,000.00.

20. The debtor's complaint (Adversary Number 82–3163) requests the Court to find the fair market value of the property to be $10,000, and, to avoid the lien of F.N.M.A. insofar as it exceeds that amount.

21. Upon consideration of the evidence presented at the hearing on December 16, 1982, and the Court finding the fair market value of the property to be $11,000.00, and that F.N.M.A. has a valid first mortgage on the premises in the amount of $19,000, the Court finds that the debtor has no equity in the property.

22. On the basis that the debtor retained no equity in the property, the Court entered an Order on January 4, 1983, granting F.N.M.A. relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

23. The Interim Trustee, James Wade, has filed a report stating that there are no assets available for distribution to the creditors.

24. F.N.M.A. has filed a motion to dismiss the debtor's complaint. (Adversary Number 82–3163).

## DISCUSSION

This case presents several interesting legal issues concerning the effect § 506(d) of the Bankruptcy Code on the rights of the holder of a first mortgage. Before addressing the merits of the case, however, the Court will turn to a small procedural matter.

■ On December 1, 1982, the Court entered an Order requiring Counsel for the plaintiff, and Counsel for the defendant, to file a detailed stipulation of all matters not in dispute. (Legal Document No. 10). This Order was designed to curtail what promised to be lengthy litigation. The Court saw no reason why substantially all of the facts could not have been the subject of a stipulation and the case quickly narrowed down to the central legal issues. Apparently, Counsel thought otherwise; the requisite stipulation has yet to be filed. The Court, therefore, finds Counsel to be in contempt of the Order of December 1, 1982, and an appropriate Order will be entered concerning the duties of counsel.

Although the major portion of this case was presented in a confusing fashion, the debtor's argument can be set forth rather simply. The debtor asserts that, because the value of the property is only $10,000, the lien of F.N.M.A. must be avoided insofar as it exceeds the value of the property. The debtor relies on § 506(d) of the Bankruptcy Code as the source of authority for the lien avoidance.

Section 506(d) provides, in its entirety, that:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

11 U.S.C. § 506(d).

The debtor argues that the lien of F.N.M.A. must be avoided insofar as it exceeds the value of the property. The Court, having found the property to be worth $11,000, and by applying the debtor's reasoning to these facts, should conclude that F.N.M.A. is relegated to a lien position of only $11,000.

However, the Court, does not take such a sanguine view. A review of the legislative history provides some relevant information:

*Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.* The voiding provision does not apply to claims disallowed only under section 502(e), which requires disallowance of certain claims against the debtor by a codebtor, surety, or guarantor for contribution or reimbursement. *(emphasis ours).*

[House Report 95–595, 95th Cong., 1st Sess. 357 (1977); cf. Senate Report No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, 5963, 6313.]

■ As cited above, both the statute and the legislative history require the party seeking to avoid the lien to request the Court to determine allowance of the claim under § 502 of the Bankruptcy Code. If the claim is disallowed, the lien is voidable.[2]

■ Section 502 provides that a claim shall be disallowed if:

(1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) such claim may be offset under section 553 of this title against a debt owing to the debtor;

(4) if such claim is for a tax assessed against property of the estate, such claim exceeds value of the interest of the estate in such property;

(5) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(6) the claim is for a debt that is unmatured on the date of the filing of the petition, and that is excepted from discharge under section 523(a)(5) of this title;

(7) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) the unpaid rent due under such lease, without acceleration, on the earlier of such dates;

(8) if such claim is for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) the unpaid compensation due under such contract without acceleration, on the earlier of such dates; or

(9) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor.

11 U.S.C. § 502(b).

In the case *sub judice,* there is no basis to disallow the claim filed by F.N.M.A. None of the reasons to disallow a claim set forth in § 502 are present in this case. The Court, therefore, concludes that this lien

---

**2.** It is interesting to note that if the mortgagee had not filed a proof of claim, this issue would probably never have arisen in that there would be no claim against which the debtor could file an objection as required by § 506(d) of the Code. *In re Hotel Associates, Inc.,* 3 B.R. 340, 341 (Bkrtcy.E.D.Pa.1980).

966

will pass through the bankruptcy proceeding unaffected.

In addition, F.N.M.A. has raised further pertinent issues which merit discussion. On the basis that there is no equity in the property above F.N.M.A.'s lien, the creditor asserts that the Court should order abandonment of the property pursuant to § 554 of the Bankruptcy Code. This case was a no-asset case as evidenced by the report filed by the interim trustee and it is self-evident that the estate has no interest in the property. F.N.M.A. alleges that, as a prerequisite for the Court to make a determination under § 506, it is necessary for the estate to have an interest in the property. Although the Court is not persuaded by this reasoning, the rationale raises an interesting point.

If this case is a no-asset case, and this fact is unquestioned, the Court questions whether it should become involved in a matter which centers on the validity of a lien duly perfected pursuant to the law of the Commonwealth of Pennsylvania. It would be more appropriate if this matter would be litigated in the appropriate state court.

Finally, F.N.M.A. argues that the recent Supreme Court decision in the case of *United States v. Security Industrial Bank et al.* is dispositive of the case at bench. *United States v. Security Industrial Bank et al.,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). In the *Security Industrial Bank,* the Supreme Court held that § 522(f) of the Bankruptcy Code could not operate to avoid liens duly perfected prior to the enactment date of the Bankruptcy Reform Act of 1978. Although the case is not directly on point and the Court did not directly address the issue of constitutionality, some interesting dicta is contained in the majority opinion:

In *Radford* [*Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593], we held that the Frazier-Lemke Act, June 28, 1934, c. 869, 48 Stat. 1289, violated the takings clause. The bank held a nonpurchase-money mortgage on Radford's farm. Radford defaulted and instituted bankruptcy pro-

ceedings. The Frazier-Lemke act, which by its terms applied only retrospectively, permitted the debtor to purchase the property for less than its fair market value.[7] We held the statute was void because it effected a "taking of substantive rights in specific property acquired by the Bank prior to" its enactment. 295 U.S., at 590 [55 S.Ct. at 863]. In his opinion for the Court, Justice Brandeis stated:

"[T]he Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public." *Id.,* at 602 [55 S.Ct. at 869].

In *Armstrong* [*v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554], materialmen delivered materials to a prime contractor for use in constructing navy personnel boats. Under state law, they obtained liens in the vessels.[8] The prime contractor defaulted on his obligations to the United States, and the government took title to and possession of the uncompleted hulls and unused materials, thus making it impossible for the materialmen to enforce their liens. We held that this constituted a taking:

"The total destruction by the government of all compensable value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking' and is not a mere 'consequential incidence' of a valid regulatory measure." 364 U.S., at 48 [80 S.Ct. at 1568–1569]. (footnotes omitted).

*Security Industrial Bank, supra,* 102 S.Ct. pp. 411, 412.

The *Radford* case, cited by the Supreme Court, dealt with the situation where a

farmer could purchase his land free and clear of the first mortgage by paying a certain appraised value.[3] Although the Bankruptcy Code does not permit a *Radford* type transaction, the effect is the same. In the case at bar, the debtor seeks to avoid the first mortgage. Once this is accomplished, the debtor could purchase the property after foreclosure or seek reformation of the loan agreement based on the mortgage amount after avoidance. On the basis of both the *Radford* and *Security Industrial Bank* cases, this Court questions whether § 506 would permit the avoidance of a first mortgage lien. It will be unnecessary to rule on this issue, however, because the Court finds the previously discussed § 502 issue to be dispositive of the case.

An appropriate Order will be entered.

---

**3.** The Frazier-Lemke Act, June 28, 1934, c. 869, 48 Stat. 1289, added § 75 to the Bankruptcy Act of 1898. The provision was designed to provide relief for farmers adversely affected by the Depression.