**In re Carl R. YODER and Sharon L. Yoder, husband and wife, Debtors.**

**Carl R. YODER and Sharon L. Yoder, husband and wife, Plaintiffs,**

v.

**The UNITED STATES of America, Department of Agriculture, Farmers Home Administration, and Dale National Bank, a corporation, Defendants.**

Bankruptcy No. 82–3681.
Adv. No. 82–2581.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 16, 1983.

---

James R. Walsh, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for debtors.

Beverly Weiss Manne, U.S. Dept. of Agr., Harrisburg, Pa., Dale Nat. Bank, Johnstown, Pa., Judith K. Giltenboth, Asst. U.S. Atty., Pittsburgh, Pa., for Farmers Home Admin.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The Debtors bring an action in several counts to avoid liens. In Count I the Debtors raise 11 U.S.C. § 506(a) to determine that all or part of certain secured liens held by Farmers Home Administration ("FmHA") and Dale National Bank in their

real property are not supported by value and should be found to be unsecured debt. In Count II the Debtors claim exemptions in tools of the trade, raising § 522(f)(2)(A) and (B) and § 522(d)(5). In Count III the Debtors urge the Court to find that certain breeding animals are also implements or tools of the trade, as described in § 522(d)(6) and § 522(f)(2)(B). These actions raise several issues. A hearing was held. Stipulations have been filed and the attorneys have briefed each of them in a thorough manner.

## Count I

### Market Value Issue

■ The purpose of the § 506(a) valuation of the real estate is that the Debtors desire to retain the farm by reinstating these mortgages in an amount that this Court finds is supported by value. The parties dispute the standard of valuation to be used. The Debtors ask the Court to use "liquidation value" as the standard for this § 506(a) purpose. The FmHA urges the Court to determine that "fair market value" is the standard to be used. FmHA believes that $94,000 is the fair market value of this property. Their belief is based on their appraisal and the appraisal of Dale National Bank. Testimony was not taken on value. The parties agreed to stipulate as to the market value, if that standard were chosen. The FmHA admits that at a public sale they will only bid the first and second mortgages, which are owed approximately $87,000. Dale National Bank holds a third mortgage and the FmHA holds a fourth mortgage.

Nothing prevents the FmHA from bidding the first two mortgages at a liquidation sale. Such a bid by the FmHA at a "liquidation" sale would be supported by their belief that the property is worth more than the value of their two mortgages.

We do not know of an accepted standard or definition for a liquidation value. It is thought to be a distress sale and less than market value, but that may not always be the case. Particularly in this case, market value would prevent a secured party from using its greater financial strength to bid

more than market value at an actual liquidation sale. As is the case here, FmHA's and Dale National Bank's actual mortgages are greater than the market value. Under these circumstances, an actual liquidation sale could be used to thwart the purposes of a debtor and defeat the purpose of § 506(a).

Accordingly, in general for bankruptcy purposes, unless special circumstances are presented, market value is a preferred standard for many reasons. In this case and for this purpose, market value is the correct standard to apply. We find the market value of this property to be the actual value of the first and second FmHA mortgages. The Dale National Bank, the holder of the third mortgage, did not answer and is defaulted. The Debtors and FmHA are to submit an Order consistent with this opinion.

### Claim Need Not Be Filed By Creditor

■ The FmHA raises by brief the argument that FmHA has not filed a Proof of Claim and therefore there is no reason for disallowance under § 502 and the Court cannot apply § 506(d). The FmHA believes that a creditor is required to file a claim before the debtor can proceed under § 506(d). The FmHA relies on In re Nefferdorf, 26 B.R. 962 (Bkrtcy.E.D.Pa.1983) and In re Hotel Associates, Inc., 3 B.R. 340 (Bkrtcy.E.D.Pa.1980).

This issue was not raised at trial by the FmHA, but was presented in FmHA briefs. It is purely a legal issue. The facts are not in dispute. The Debtors object to its consideration. Nevertheless, the Court considers it.

Section 502 deals with disputed claims which may be disallowed. Section 506(a) deals with the valuation of an allowed claim which is secured by a lien. The mortgage claims of the FmHA are not disputed by the Debtor.

Under the Act, similar action could be brought under Rule 306(d). The Code does not deny the debtor as a party in interest from filing a claim on behalf of a secured party. When, for tactical or other reasons, a creditor does not file a claim, the Bank-

ruptcy Court is not denied jurisdiction to value the collateral and to determine what portion of a claim is secured and what portion is unsecured. The Debtor could have raised § 502; however, by raising only § 506(a), the Debtor has admitted and treated the claim as undisputed and allowed. We hold that the bringing of an action by the Debtor under § 506(a) constitutes the filing of an allowed claim by the Debtor.

*Nefferdorf* dealt with § 506(d), not § 506(a). Section 506(d) is not raised in this proceeding. *Hotel Associates* would appear to permit only the creditor to file a claim. This theory would permit a creditor to avoid Bankruptcy Court jurisdiction. This Court believes that a petition under § 506(a) constitutes a filing of an allowed secured claim by the Debtor. We do not follow *Hotel Associates* in this particular issue.

*Count II*

*Tools and Implements*

■ In Count II the Debtors claim exemption under § 522(f)(2)(A) and (B) and § 522(d)(5) for certain tools of the trade. The FmHA defends on several bases.

FmHA argues further that Congress did not intend "implements and tools of the trade" to encompass large pieces of farm equipment. This Court finds that *Augustine v. U.S.,* 675 F.2d 582 (3rd Cir.1982) is dispositive. In *Augustine,* the 3rd Circuit found for the debtors on this very issue. We follow the Circuit.

*Is a farmer who also earns non-farm income permitted to exempt farm implements and tools?*

The FmHA argues that the Yoders are not farmers for purposes of the definition in § 101(17) and urge the Court not to grant the exemption outlined in § 522(f)(2)(B). FmHA argues that Yoder is by profession a full-time hospital employee. The parties have stipulated as to income received from farm and non-farm sources. Three years of information are stipulated. The year 1982 will suffice for this issue.

The 1982 farm income was $23,133 and non-farm income was $24,118.28 or farm income was 49% of total income. Carl Yoder works at two jobs. He uses hospital employee vacation time, weekends and holidays and he hires part-time employees to assist with the farm.

Section 101(17) provides:

"Farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

Admittedly Carl Yoder does not meet this 80% test. The Debtor argues that § 101(17) is a definition and should only be utilized when the Code uses the specific word farmer in order to define a farmer's unique right or responsibility. For example, under § 303(a), the word farmer is actually used. It provides that an involuntary case cannot be commenced against a farmer who meets this definition. The Debtor argues that this definition cannot be used for the purpose of depriving a debtor of an exemption under § 522(f) because he is also a farmer.

The technical position taken by the FmHA would eliminate those farmers who had other jobs with earnings greater than 25% of their farm income. The FmHA theory would not exclude bigger farms or smaller farms, only farmers with 25% or more non-farm income would be excluded.

This Court believes that the application of the farmer definition to limit the use of § 522(f)(2)(B) by a debtor is not appropriate and not intended by Congress.

Debtor is also a defined word in § 101(12). Debtor is not defined to exclude farmers with outside income. Debtor, as used in § 522(f), contains no unique exclusion. If that were the intent of the language, such a classification of debtors would be suspect and subject to constitutional attack. FmHA urges the Court to follow *In re Holman,* 26 B.R. 110 (Bkrtcy.M.D.Tenn.1983) and *In re Liming,* 22 B.R. 740

(Bkrtcy.W.D.Okl.1982). We do not believe *Holman* and *Liming* stand for this proposition. *Holman* had ceased all efforts at farming. *Liming* met the definition in the Code.

■ The Court believes the Debtor need only prove that he is legitimately engaged in a trade which currently and regularly uses the specific implements or tools being exempted. The language of § 522(f)(2)(B) is broad; it also permits a "dependent of the debtor" to claim such an exemption in their trade tools and implements. Exemptions are to be liberally construed. *In re Dubrock,* 5 B.R. 353, 2 C.B. C.2d 776 (Bkrtcy.W.D.Ky.1980). There is no question that Yoder is a bona fide farmer and uses these tools and implements, even though he also is a hospital employee.

Although § 522(d)(6) limits lien avoidance initially to property valued at $750, the Debtor is permitted in § 522(d)(5) to exempt $400 in cash and the unused amount of $7,500 under § 522(d)(1) "in any property".

## Count III

### Breeding Stock Not Implements or Tools

■ In Count III the Debtor raises an additional issue concerning the classification of various breeding stock. This Debtor is a farmer in the business of breeding swine and claims the breeding stock is included in the concept of tools or implements of the trade. We agree that the concept of breeding stock, seed crops and tools and implements are similar, in that their exemption provides the Debtor with a fresh start. The plain words do not include animals. Animals and crops are words used in other exemption sections to describe property of the Debtor. Animals constitute property of the Debtor, which the Debtor can exempt under § 522(d)(3) and § 522(d)(5) and can avoid under § 522(f)(2)(A). The Debtor is not provided with authority to avoid non-purchase money security interest in breeding stock under § 522(f)(2)(B), even though breeding stock may be exempt under § 522(d)(5).

### Novation or Not

■ After the above preliminary arguments, the major issue remaining in Counts II and III is whether the consolidation note constitutes a novation. The FmHA argues that certain of their security agreements predate the Code and were properly perfected and continued. The Debtor argues that the three notes dated June 26, 1973, June 5, 1978 and October 2, 1978 were consolidated by a note and mortgage on December 19, 1980 and that this consolidation constitutes a novation.

The Debtor argues that FmHA was given additional security in the form of a mortgage and that a significantly higher interest rate was given. FmHA answers by challenging the value of this fourth mortgage. By hindsight, the fourth mortgage appears to have little value; whether it had value at the time was not heard. The FmHA defends mainly by raising the actual language of the note, which specifically provides that the existing security instruments are to remain in effect as security for the notes.

The actual language of the consolidation note provides:

> This note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) . . . (and lists by face amount, interest rate, original date and borrower and last installment due date, the notes dated June 26, 1973, June 5, 1978 and October 2, 1978). Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not effected by the consolidating . . . The security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note and for other related obligations.

We conclude that the priority dates of the financing statements and security agreements originally recorded for the three notes are preserved and now constitute perfection for the new consolidation note. The

consolidation note clearly provides that the unpaid principal and interest was *not* satisfied and that $47,000 of that unpaid principal and interest is represented as debt in the new note. Was this new consolidation note a novation? In what manner do the actual original notes continue to have vitality?

■ Under Pennsylvania law, the essential elements of a novation are the displacement and extinction of a valid contract, the substitution for it of a valid new contract, a sufficient legal consideration therefor, and the consent of the parties. *Yoder v. J.F. Scholes, Inc.,* 404 Pa. 242, 173 A.2d 120 (1961), *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Super. 372, 380 A.2d 826 (1977).

■ Applying these requirements to the facts, we conclude that the old notes do not have continued vitality and that the new consolidation note is a novation of the three original contracts. Although the old debt was not satisfied by payment, it was equitably satisfied by substitution of a new note.

"(S)atisfaction (in equity) is always something given either in whole or in part as a substitute or equivalent for something else and not ... something that may be construed as the identical thing covenanted to be done." *Black's Law Dictionary* 1509 (Rev. 4th ed. 1968).

While its language preserves the priority dates of the old notes, the new note is intended as a substitute for the old. The terms in the new note have been substantially changed to a much higher interest rate, 5–8% to 10½%. There is also a change in the terms of payment from the earlier notes and additional security given. For these reasons we find a valid new and different note with sufficient legal consideration.

However, this Court distinguishes between the novation of such a consolidation note and the relation back of the consolidation note to the former financing statement for perfection and priority.

In *United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Supreme Court found no intent by Congress for retroactive application in § 522(f)(2) and interpreted *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 as requiring a clear, explicit expression in the statute divesting a property interest retroactively. When the parties entered into this consolidation note on December 19, 1980, the Code had been enacted. We distinguish between the priority dates which were retained by FmHA and which predate the Code (6/26/73, 6/5/78 and 10/2/78) and the date of the novation (12/19/80).

In dealing with a similar problem related to judicial liens, the Court of Appeals for the 3rd Circuit has distinguished between the date of execution judgment from the date of confessed judgment. See *In re Ashe,* On Remand from the Supreme Court of the United States, 712 F.2d 864, 868 (1983), U.S. Court of Appeals for the Third Circuit. Similarly the date of perfection of a security interest of the consolidation note of December 19, 1980 can be distinguished from the date of its priority, June 26, 1973, June 5, 1978 and October 2, 1978, and we find a portion of it may be avoided under § 522(f).

The Debtors and the FmHA may submit an Order consistent with this opinion.

*Sovereign Immunity*

■ The FmHA defends by raising objections to the application of § 522(f) to the United States, claiming the sovereign immunity bars the application of § 522(f) to the United States. The FmHA urges a reading of § 106(c) as imposing upon the statute a requirement to use the three prescribed nouns "creditor", "entity" or "governmental unit". Whereas, § 522(f) speaks about the avoiding of "the fixing of a lien on an interest of the debtor in property" and does not use these specific words. We find little merit in this defense. The addition of one of these words as an adjective preceding the word lien would be redundant. The word lien carries the implication that it is a creditor's lien. The style of § 522(f) is drafted as an action "in rem" with the avoiding action directed to the

rem. The "in rem" nature of § 551 makes this clearer.

The real effect of definition in § 106(c) is to waive governmental immunity, except when a specific exception is made explicit by the Code. This style of drafting is apparent in § 362 where the drafters included everything and then in § 362(b) excluded certain governmental actions from its effect. In *Augustine* at page 583, the Court of Appeals also discusses this issue and finds little merit in the argument. Additionally, the Supreme Court in *Whiting Pools* by inference and dicta appears to give it little weight (see *United States v. Whiting Pools, Inc.*, —— U.S. ——, ——, 103 S.Ct. 2309, 2315, 76 L.Ed.2d 515 (1983). We hold that the Code applies to the United States in this case and that sovereign immunity cannot be raised to defeat an exemption in this case.

The parties are requested to submit a proposed order consistent with this opinion.