In the Matter of Michael David DECKER and Karen Louise Decker, Debtors.

Bankruptcy No. 82–30276.

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Nov. 21, 1983.

Robert E. Canfield, South Bend, Ind., for debtors.

Richard F. Joyce, Bremen, Ind., for objectors.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

On April 12, 1982, the debtors herein filed a motion to avoid the lien held by LaPorte Production Credit Association (hereinafter P.C.A.). On May 3, 1982, P.C.A. filed an objection to the motion to avoid lien. Trial was held on July 26, 1982. Upon receipt of the parties' briefs, the motion to avoid lien and the objection thereto were taken under advisement on September 9, 1982.

11 U.S.C. § 522(f) provides that:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

. . . . .

(B) implements ... or tools, of the trade of the debtor or the trade of a dependent of the debtor.

The P.C.A. holds a nonpossessory, nonpurchase-money security interest in the debtors' farm equipment. In their Schedule B–4 filed with the court on March 25, 1981, the debtors claimed exemptions in the farm equipment pursuant to Ind.Code § 34–2–28–1(b). The Indiana exemption statute provides for an exemption of tangible personal property in the amount of $4,000. The fact that Indiana has opted out of the federal exemption scheme does not affect the debtor's power to avoid liens pursuant to Section 522(f). The debtors may avoid a lien on property to the extent that an exemption for such property is allowed by the state. 3 *Collier on Bankruptcy* ¶ 522.29[1] p. 522–81 (15th Ed.).

The debtors seek to avoid P.C.A.'s lien on the basis that the lien impairs the debtors' exemption in implements or tools of the debtors' trade. The parties do not dispute that the farm equipment in question constitutes "implements" or "tools" of the trade of farming. At issue is whether the debtors are engaged in the trade of farming, so as to qualify for the avoidance of liens on the tools of that trade pursuant to Section 522(f)(2)(B).

The P.C.A. contends that the definition of "farmer" contained in 11 U.S.C. § 101(17) should be utilized to determine whether a debtor may avoid liens on farm equipment pursuant to Section 522(f)(2)(B). Section 101(17) states that:

(17) "farmer" means person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person:

Admittedly, the debtors do not meet this 80% test. The court in *In re Holman*, 26 B.R. 110 (Bkrtcy.M.D.Tenn. 1983) held that Section 101(17) was binding on the court in determining whether an individual is a farmer for purposes of Section 522(f)(2)(B). The court in *In re Yoder*, 32 B.R. 777 (Bkrtcy.W.D.Pa.1983), reached the opposite result, holding that application of the Section 101(17) definition to limit the use of Section 522(f)(2)(B) by a debtor is not appropriate and not intended by Congress. This court is in agreement with the *Yoder* decision. The definition of "farmer" contained in Section 101(17) is inapplicable to Section 522. For purposes of Section 522, the debtor need only prove that he is legitimately engaged in a trade which regularly uses the specific tools or implements being exempted. This result is supported by both

the legislative history of Section 101(17) and prior case law.

The legislative history of 11 U.S.C. § 101(17) states that:

The purpose of the definition is for use in the sections of the proposed bankruptcy code prohibiting involuntary cases against farmers.

[House Report No. 95–595, 95th Cong. 1st Sess. 310–311 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 23–24 (1978), U.S.Code Cong. & Admin.News 1978 pp. 5787, 6268.]

In addition to this legislative history, the court looks to those cases where a debtor has claimed to be a farmer to qualify for an exemption for tools of the trade pursuant to Section 522(d)(6). While these cases do not deal specifically with Section 522(f)(2)(B), their discussion of whether a debtor is engaged in the trade of farming is persuasive. The majority of these cases have not relied on Section 101(17) to determine whether a debtor is engaged in the trade of farming. These cases have held that a debtor who engages in farming on less than a full time basis may nevertheless qualify for an exemption in "tools of the trade." *Matter of Hahn,* 5 B.R. 242 (Bkrtcy.S.D.Iowa 1980); *Matter of Hanks,* 11 B.R. 706 (Bkrtcy.W.D. La.1977). The court in *Hanks* stated that:

"We can find nothing in the statute which requires that it be shown that the trade, calling or profession, within which the tool or instrument is used, was the exclusive means by which the debtor obtained a living for himself and family.

*Id.* at 709, citing *A. Wilbert's Sons Lumber & Shingle Co. v. Ricard,* 167 La. 416, 119 So. 411 (1928).

■ The word "farmer" does not appear in Section 522 of the bankruptcy code. Instead, the word "debtor" is used. There is no requirement that debtors engaged in a trade other than farming receive a certain percentage of their income from the trade which is the basis for the exemption. The court in *In re Robinson,* 206 F. 176, 30 Am.Bankr.Rep. 686 (D.C.Idaho 1913) held that a debtor who actually used tools or implements pertaining to different trades could claim an exemption for the tools of both trades. The court reasoned as follows:

Suppose that in a small community, where there is not sufficient amount of either carpenter's work or painting to engage all of the time of one man, a mechanic qualifies himself to render efficient service both as a carpenter and a painter, and purchases the necessary tools and appliances for carrying on both lines of work, and in fact follows both trades, and depends for his livelihood upon his earnings in both; is there any reason either in the spirit or in the letter of the statute, when fairly construed, why he should not be permitted to claim as exempt, up to the (statutory limit) the tools of both callings? None is apparent.

*Id.* 206 F. at 178, 30 Am.Bankr.Rep. at 688. Mr. Ralph Stolts, a loan officer at P.C.A., testified at trial that a substantial percentage of the farmers serviced by P.C.A. hold secondary, non-farming jobs. There was ample evidence at trial that the debtor, Michael Decker, has been substantially engaged in farming for several years. The statement of financial affairs filed on March 25, 1981 lists both the Auto Care Body Shop and farming as the debtor's occupations. There is no question that Mr. Decker is a bona fide farmer and uses the tools and implements in question, even though he may hold another job.

■ The P.C.A. also argues that the debtors had ceased farming altogether on the date of the bankruptcy petition and that the provisions of Section 522 are therefore unavailable to the debtors. Admittedly, the general rule is that the debtor must be engaged in the trade on the date of the petition in order to claim the tools of that trade as exempt. *In re Johnson,* 19 B.R. 371 (Bkrtcy.D.Kan.1982). However, when the debtor has only temporarily ceased the vocation at the time of the petition, the tools of the trade may still be exemptable. *Matter of Hahn,* 5 B.R. 242 (Bkrtcy.S.D. Iowa 1980). The court in *In re Pommerer,* 10 B.R. 935, 942 (Bkrtcy.D.Minn.1981) stated that:

That they (the debtors) do not, in fact cannot, farm at the present time does not necessarily destroy this status. The testimony indicates that defendants intend to resume farming just as soon as circumstances permit. Their intention must be afforded great weight. Abandonment of a trade requires an intentional abandonment.

The testimony at trial established that the land upon which the debtors primarily farmed was owned by Michael Decker's parents. At or near the time of the debtors' bankruptcy petition, the parents were engaged in divorce proceedings. During that time, Michael Decker's father would not permit him on the land to farm. The debtors testified that this interference was the primary reason why they temporarily ceased farming. The debtors testified at trial that they are presently engaged in farming the land now owned by Michael Decker's mother.

The P.C.A. also argues that even if Michael Decker is engaged in the trade of farming, his wife, Karen Decker, is not. Mrs. Decker testified at trial that she helped out on the farm by feeding the hogs and doing other chores. The court in *In re Pommerer,* 10 B.R. 935, 942 (Bkrtcy.D.Minn. 1981), in holding that the debtor/wife should be considered a farmer, stated that:

> One would have to blind oneself to reality not to . . . recognize that a small farm in Minnesota is a family occupation.

However, even if Mrs. Decker is not considered a farmer in her own right, she is nevertheless entitled to avoid P.C.A.'s lien pursuant to Section 522(f). Section 522(f)(2)(B) is available with respect to "implements . . . or tools, of the trade of the debtor *or the trade of a dependent of the debtor.*" (emphasis added). The definition of "dependent" contained in Section 522(a)(1) includes a spouse, whether or not actually dependent. Pursuant to this definition, Mr. Decker is considered a dependent of the debtor, Mrs. Decker. As this court holds that Mr. Decker is engaged in the trade of farming, Mrs. Decker may avoid P.C.A.'s lien to the extent to which it impairs her exemption in the farm equipment. *See Augustine v. United States,* 675 F.2d 582 (3rd Cir.1982).

The debtors have established that they are engaged in the trade of farming. P.C. A.'s lien on the debtors' farm equipment is therefore a lien on implements or tools of the debtors' trade and may be avoided to the extent that it impairs an exemption to which the debtors are entitled.

SO ORDERED.