In re Kenneth Bruce MIDDLETON and Lynda Anne Middleton, Plaintiffs,

v.

FARMERS STATE BANK OF FOSSTON, Defendant,

arising in or related to the bankruptcy case of:

Kenneth Bruce Middleton and Lynda Anne Middleton, Debtors.

Adv. No. 3–83–7218.
Bankruptcy No. 3–83–505.

United States Bankruptcy Court, D. Minnesota, Sixth Division.

Jan. 18, 1985.

 

John Winters, Crookston, Minn., for debtors.

Edwin Odland, Crookston, Minn., for Farmers State Bank of Fosston (hereinafter "the bank").

## ORDER FOR JUDGMENT

JOHN J. CONNELLY, Bankruptcy Judge.

Based on the files, records, testimony, and evidence presented at trial, the Court makes this Order pursuant to the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL POSTURE

This action was originally commenced on June 14, 1983. The debtors sought to avoid certain non-possessory, non-purchase money liens held by the bank on the debtors' farm machinery and equipment pursuant to 11 U.S.C. § 522(f)(2)(B). The bank contested the claimed exemption, and a trial was held on November 17, 1983 before the Honorable William J. Hill. By Order dated December 19, 1983 Judge Hill denied the debtors' request to avoid the liens holding § 522(f)(2)(B) does not extend to large items of farm equipment. 37 BR 36. Plaintiffs appealed the decision to the Unit-

ed States District Court, District of Minnesota, on January 16, 1984. On August 13, 1984 the District Court, the Honorable Miles Lord presiding, reversed Judge Hill's decision holding, "This Court determines that large farm equipment is exemptible and avoidable upon a proper showing of the standard set out herein."

*Middleton v. Farmers State Bank of Fosston, (In re Middleton)*, 41 B.R. 953 (D.Minn.1984). Judge Lord remanded the case to determine the following factual issues:

(1) Whether appellants are farmers (either that they were farming at the time they filed their Complaint or that they intended to farm again in the future) and

(2) Which of the disputed items are commonly understood to be farm "tools" or "implement" and

(3) Which of the disputed farm "tools" or "implements" are commonly used by persons employed in the debtors' trade.

This Court held an evidentiary hearing to determine the questions posed by Judge Lord's remand.

## FINDINGS

The debtors, Kenneth and Lynda Middleton, began farming in the Fosston, Minnesota, area in early 1974. The farm was primarily a cattle operation at its inception. The debtors raised some crops using them to feed their herd. Over the years the cattle herd was reduced and sheep were purchased to replace them. By 1982 the Middleton herd included primarily sheep, along with several prize heifers. In addition, they extended the use of their land to a neighboring farmer to graze his cattle. Both debtors were actively engaged in the farming operation as equal partners. The debtors liquidated a substantial portion of the sheep herd during 1982 to pay certain debts owed to the bank and other creditors. In early 1983 they continued to liquidate the herd at the request of the bank.

On April 1, 1983, Kenneth Middleton was forced to begin employment in Rockford, Illinois, with his father-in-law's business to support his family. He testified that if he had been given the opportunity to continue farming at that time he would have done so. However, pressure from the bank and other creditors forced him to liquidate the farm assets to pay his debts. After April, 1983 Lynda Middleton continued to feed and water the remaining livestock including those heifers belonging to their neighbor and grazing on their farm. They rented all of their land to a neighbor for cultivation and grazing during the 1983 growing season. Mrs. Middleton remained on the farm as a farmer up until the livestock and farm equipment was auctioned on June 4, 1984. Mr. Middleton testified that if at all possible he intends to resume farming in the future. The debtors claim the following equipment as exempt:

| Equipment | Sale Price At Auction |
|---|---|
| Hillsboro Gooseneck Trailer | $ 1,500 |
| Leyland Tractor | 2,000 |
| Melroe Drill | 800 |
| Brillion Seeder | 1,000 |
| John Deere Plow | 50 |
| Melroe Drag | 300 |
| John Deere Flight Conveyor | 500 |
| I.H. Mower-Conditioner | 900 |
| John Deere Rake | 1,200 |
| John Deere Bale Wagon | 50 |
| 2 Bale Mowers | 200 |
| Misc. Livestock Equipment | 1,500 |
| | $10,000 |

The values of this equipment were taken from values determined by a liquidation sale held June 4, 1984. At the hearing the debtor testified he used each piece of equipment in his livestock farming operation. He further stated that all of the equipment is commonly used by sheep and cattle farmers in their livestock operations. The bank did not present any evidence with respect to the use or characterization of the equipment.

## DISCUSSION

The first issue remanded to this court for determination is whether the Middletons are farmers. The term farmer is defined in the Code as:

(17) "Farmer" means person that received more than eighty percent of such person's gross income during the taxable

year of such person immediately preceding the taxable year of such person which the case under this title concerning such person was commenced from a farming operation owned or operated by such person; 11 U.S.C. § 101(17) (1979 and sup. 1973).

■ This definition is not all inclusive. It simply created an irrebutable presumption that if the debtor satisfies the definition contained in § 101(17) he is a farmer. *In re Yoder*, supra, at 781. However, one may be a farmer and not meet the defined requirements. If the 80% income was the only test, many debtors legitimately engaged in farming could be excluded from taking advantage of the needed benefits. They would be deprived of the benefits afforded to farm debtors by the Code because they are hard working and produce income for sources other than farming. Each case must be judged upon its own particular facts and circumstances. The debtor must be engaged in farming at the time the exemption is claimed or have a present intent to continue farming at some point in the future. *In re Middleton*, supra; *In re Pommerer*, 10 B.R. 935 (Bankr. D.Minn.1981).

■ There is no doubt that Lynda Middleton was farming up to the time the equipment and livestock was sold. She was living on the farm, feeding and watering the stock, plus maintaining the upkeep of the facilities. Kenneth Middleton was not actually farming after April 1, 1984; however, his testimony that he intends to resume farming as soon as the opportunity arises is creditable. He has a present intent to continue farm life as soon as it is practicable. Therefore, this Court concludes the debtors are farmers able to use the exemptions available to farmers under Minnesota and federal law.

■ The next issue remanded for consideration by this court was whether the equipment claimed as exempt is commonly understood to be farm "tools" or "implements." The debtor testified that each piece of equipment listed was commonly and customarily used by farmers engaged in livestock farming. All of the equipment constitutes equipment that can be categorized as farm "tools" or "implements."

■ It is important to note that the major objective in any bankruptcy proceeding is to afford debtors the opportunity to make a new life for themselves. When Congress drafted the Bankruptcy Code in 1979, it began with the premise that the debtor should be afforded a "fresh start". H.Rep. No. 95–595, 95th Cong., 1st Sess. 126 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. See also *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). A fresh start should be a genuine new beginning for any debtor. It should permit him to continue his chosen profession or trade and be free from the burdens of pre-petition debts. It should give the debtor the opportunity to become a contributing member of his community and permit him to follow his line of work and support his family.

■ One way Congress developed to enable debtors in bankruptcy to gain a true fresh start was to allow them to exempt their equity in certain types of property. Debtors may keep the exempted property outside the reach of creditors to enable them to continue in their chosen trade or profession. See 11 U.S.C. § 522. Farmers rarely referred to themselves as a profession or trade but rather see themselves involved in a way of life—a way of life that embraces the toil of a tradesman and requires the acumen and intelligence of a professional. The scope of these exemptions is determined by § 522(d)(1) through (11). Congress supplemented a debtor's ability to utilize these exemptions by permitting the debtor to avoid certain liens on specific categories of property pursuant to § 522(f). The section reads in pertinent part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor

in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (B) of this section, if such lien is—

(2) a non-possessory, non-purchase money security interest in any—

(B) *implements*, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor;

11 U.S.C. § 522(f)(2)(B) (1979 and sup. 1983) (emphasis added).

 Under § 522 a debtor may choose either the exemption created by federal statutes or exemptions created by state statutes of the state in which the case is venued. Minnesota creates a specific exemption for farm equipment; the alternate exemptions in the Bankruptcy Code do not. Minn.Stat. § 550.37, subd. 5 (1947 and supp.1983), allows a debtor to exempt "[F]arm machines and implements used in farming operations by a debtor engaged principally in farming, livestock, farm produce, and standing crops not exceeding $5,000 in value." This Court feels that the federal and state exemptions should be read liberally wherever possible to facilitate the debtor's fresh start. *In re Yoder*, 32 B.R. 777 (Bankr.W.D.Penn.1983); *In re Dubrock*, 5 B.R. 353 (Bankr.W.D.Ky.1980).

 Bankruptcy Courts are called on to interpret State Commercial Law in many varied circumstances. The Bankruptcy Code is premised upon developing Federal Bankruptcy Law in concert with the differing State Commercial Law throughout the 50 states. The substantive rights between a debtor and a creditor are shaped by state law. See *In re Sunberg*, 729 F.2d 561 (8th Cir.1984). Federal Bankruptcy Law should be read to eliminate conflicts with state law wherever possible. State Commercial Law is the backdrop upon which Federal Bankruptcy Law is imposed. Determining the secured status of a creditor's lien is decided by Bankruptcy Courts under state law. Also, in a Chapter 11 case, the operation of the debtor's business is guided by state law, not Federal Bankruptcy Law. The validity of an exemption is an area which Congress specifically tied to state law. See

11 U.S.C. § 522. Debtors may choose state or federal exemptions to facilitate their fresh start. Minnesota specifically allows an exemption for generic-type farm equipment. See Minn.Stat. § 550.37, Subd. 5. This Court feels the debtor should be granted the full reach of the state exemptions, so long as it does not conflict with a specific provision of the Bankruptcy Code. A narrow reading of § 522(f) would inhibit the debtor's ability to utilize the full benefit of the exemption intended for his benefit. There is no cogent reason for interpreting federal statutes narrowly to exclude the incorporation of substantive rights granted by state law.

This Court agrees with the District Court's broad reading of § 522(f)(2)(B). *In re Middleton*, supra. See also *E.G. Augustine v. United States*, 675 F.2d 582 (3d Cir.1982); *In re Yoder*, 32 B.R. 777 (Bankr.W.D.Penn.1983). Farmers are forced to use large expensive implements to be farmers. Modern day farming requires large capital investments to purchase the implements necessary for farming. They should not be penalized by a closing off of their rights to exemptions simply because they choose farming as a means of supporting a family. Plaintiff's narrow reading of the exemption runs counter to the goals of the Bankruptcy Code.

The bank argues Congress intended the tools of the trade exemption to be limited to small hand-held tools such as hammers or wrenches, because it only allowed a $750.00 sum for the exemption. This argument fails to account for the so-called overflow provisions in § 522(d)(5). This section reads:

(5) The debtor's aggregate interest, not to exceed in value $400.00 plus any unused amount of exemptions provided under paragraph (1) of this subject, in any property. 11 U.S.C. § 522 (1979 and Supp.1983).

Under this section, the debtor can utilize his $7,500.00 homestead exemption combined with the $750.00 tools of the trade exemption to claim a total of $8,250.00 of

equipment as exempt. Even under the Federal Exemption Statutes, a debtor would have enough exemptions in dollar amount to exempt large farm equipment and avoid the liens pursuant to § 522(f).

Finally, this court must determine whether each piece of equipment is commonly and customarily used by livestock farmers. All of the evidence presented unequivocally indicated that livestock farmers typically use this type of equipment.

■ The debtors have met their burden to prove each of the elements set out by the District Court to enable them to claim the exemptions. Therefore, this court finds the exemptions are proper and should be allowed.

An additional issue has been raised by the parties. The bank contends that if the debtors prevail on the lien avoidance action, it should only be liable for the claimed $10,000.00 exemption and not for any interest on such amount. They point to the failure of the debtors or the Court to make any demand for placing the funds from the June 4, 1983 action into an interest-bearing escrow account. The debtors argue they are entitled to interest on the $10,000.00 beginning on June 4, 1983 and continuing to the present time. For the following reasons, the Court believes the debtors are entitled to pre-judgment interest at the rate of 8% per annum beginning on June 4, 1983 and continuing until payment.

■ Under Minnesota law, pre-judgment interest is permissible in certain circumstances. *In re Moosbrugger v. McGraw-Edison Company*, 284 Minn. 143, 170 N.W.2d 72 (1969), the Minnesota Supreme Court stated:

The general rule in this state is to require interest in the case of a liquidated claim or a sum certain and not allow interest in a case of an unliquidated claim because a defendant does not know how much he owes until the verdict is reached. However, Minnesota has adopted the position that where a claim is unliquidated but ascertainable by computation or reference to generally recog-

nized standards such as market value and the claim does not depend on any contingency, interest shall be allowed the same as for a liquidated claim. Id. 170 N.W.2d at 82, citations omitted.

■ Where the claim in dispute is liquidated to an amount certain, the prevailing party is entitled to interest to compensate for his or her lost opportunity costs. The plaintiffs here incurred an actual diminishment in the real value of the $10,000.00 from deferring receipt of the money until the case was fully litigated. In this instance, the amount has been certain, $10,000.00 for the entire period from June 4, 1983 to the present.

■ A federal court must follow the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). The right to obtain pre-judgment interest must be characterized as a substantive right rather than procedural. It affects the actual amount of damages allowed to the prevailing party. The claimed exemption was liquidated at $10,000.00 and has never changed during the course of litigation. There was never a question with regard to the amount of the exemption, only the debtors' right to claim such exemption. The debtors are entitled to pre-judgment interest up to the time of Judge Hill's order for judgment on December 19, 1983. Once the judgment was entered, post-judgment interest began to accrue. This Court feels 8% per annum is a reasonable return to the debtors to compensate for the opportunities to utilize the money lost during the appellate process.

IT IS ORDERED that the debtor shall be allowed to claim as exempt all of the equipment listed above as exempt property. The defendant shall return to the debtors the $10,000.00 collected from selling the equipment plus interest at the rate of 8% per annum.

LET JUDGMENT BE ENTERED ACCORDINGLY.